## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Glenn Kevin Hazley,                          Case No. 16-cv-3935 (SRN/TNL)

               Plaintiff,

v.                                           **REPORT &**
                                             **RECOMMENDATION**
Tom Roy, and
Becky Dooley,

               Defendants.

---

Glenn Kevin Hazley, 225 West Fifteenth Street, Apartment 101, Minneapolis, MN 55407 (pro se Plaintiff); and

Steven Forrest and Kelly S. Kemp, Assistant State Attorneys General, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, MN 55101-2127 (for Defendants).

---

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss (ECF No. 13) and Plaintiff's Motion to Proceed With Complaint (ECF No. 23) and Motion to Amend Complaint (ECF No. 26). These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Susan Richard Nelson, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

## II. BACKGROUND[1]

By Amended Complaint,[2] Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights against Defendant Tom Roy, Commissioner of the Minnesota Department of Corrections, and Defendant Becky Dooley, Warden of the Minnesota Correctional Facility located in Moose Lake, Minnesota ("MCF – Moose Lake").  (Am. Compl., ECF No. 7.)

### A. Amended Complaint

Plaintiff alleges that he was "denied an opportunity to bail out from jail" after his sentence for third-degree burglary was overturned by the Minnesota Court of Appeals. *See State v. Hazley*, No. A15-1418, 2016 WL 953051 (Minn. Ct. App. Mar. 14, 2016). (Am. Compl. at 5.[3])  Plaintiff alleges that MCF – Moose Lake purposefully prevented the transfer of funds from his inmate account at MCF – Moose Lake for payment of the bail set by the state district court.  (Am. Compl. at 4.)  As a result, Petitioner alleges that he "was held illegally until the day of [his] trial."  (Am. Compl. at 4.)  Plaintiff brings this action against Warden Dooley "because she was in charge of [his] custody as acting Warden at MCF – Moose Lake at the time of the incident" and Commissioner Roy because "he is the boss of . . . [Warden] Dooley and as well in charge of [his] custody as

---

[1] "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party."  *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

[2] Two Amended Complaints were received via mail by the Clerk of Court on February 21, 2017.  (ECF Nos. 7, 8.) These Amended Complaints were received and scanned by the Clerk of Court on the same day, but docketed a day apart.  The Amended Complaints are identical and the Court cites only to one document rather than both.

[3] The pagination of Plaintiff's documents is not consistent, i.e., some documents are not consecutively paginated and others do not contain page numbers.  Therefore, when citing to Plaintiff's documents, the Court has used the pagination created by the Court's electronic filing system.

stated by law in M[innesota]." (Am. Compl. at 5.) Plaintiff seeks monetary damages and a jury trial. (Am. Compl. at 5.)

Incorporated by reference to the Amended Complaint were "grievance related documents" Plaintiff filed with his initial Complaint. (Am. Compl. at 3.) The documents consist of: (1) a conditional release order issued by a state district court judge in Hennepin County, Minnesota, setting bail in the amount of $8,000 or a cash alternative of $800,[4] ECF No. 1-5 at 11; (2) a memo to Plaintiff from an MCF – Moose Lake employee, ECF No. 1-5 at 12; (3) a May 10, 2016 kite from Plaintiff to "Inmates Accounts," inquiring how to pay his bail from his inmate account, which was answered by "I/m Accts," ECF No. 1-5 at 3; (4) a May 12, 2016 kite from Plaintiff to "Inmate Accounts" providing "the requested documents" for transfer of funds to Hennepin County with a response from "I/m Accts" on May 13, 2016, stating that request was processed that day, ECF No. 1-5 at 2; (5) an inmate trust account receipts and disbursements record for May 13, 2016, showing a transaction in the amount of $800 for "Hennepin County Criminal Court," ECF No. 1-5 at 1; (6) two kites from May 12, 2016 from Plaintiff to "Records," asking how long it will take for him to be released following the Minnesota Court of Appeals' decision, answered by "D Koecher" and "Jackie B," ECF No. 1-5 at 13-14; (7) a Hennepin County inmate grievance form completed by Plaintiff on June 16, 2016, regarding his "bail check," ECF No. 1-5 at 4; (8) a letter from Plaintiff to the state district court judge dated June 19, 2016, stating that he paid the $800

---

[4] While the copy of the conditional release order filed with the initial Complaint is hardly legible, Plaintiff filed two copies of the same order along with his opposition to Defendants' motion to dismiss. (ECF No. 25 at 4 ("Exhibit 4") and ECF No. 25-1 at 5 ("Exhibit 9").)

bail but has not yet been released and has been unable to get any answers, ECF No. 1-5 at 9-10; (9) a letter from Plaintiff to the inmate accounts department at MCF – Moose Lake dated June 21, 2016, asking that MCF – Moose Lake stop payment on the prior check and send the funds to Plaintiff directly at a forwarding address, ECF No. 1-5 at 6; (10) a letter from Plaintiff dated June 23, 2016, to "DOC Inspection & Enforcement Unit," seeking help regarding the status of his funds, ECF No. 1-5 at 7-8; (11) a Hennepin County inmate grievance form completed by Plaintiff on July 2, 2016, seeking contact information for supervisory employees in order to address the problems with his bail check, ECF No. 1-5 at 5; and (12) a request from Plaintiff to "Records Dept/Henn. Cty. Jail," dated October 25, 2016, for copies of his mental-health records from May through July 2016, ECF No. 1-5 at 16.

### B. "Motion to Proceed with Complaint"

In response to Defendants' motion to dismiss, Plaintiff filed a "Motion to Proceed with Complaint" along with a supporting memorandum. The Court has construed these documents as Plaintiff's opposition to Defendants' motion to dismiss. Plaintiff's opposition contains additional facts regarding the events in question. As stated in Section III.B *infra*, the Court has considered these allegations in its analysis and will discuss them in greater detail where relevant.

### C. Motion to Amend

In response to Defendants' motion to dismiss, Plaintiff filed a motion to amend his Amended Complaint. In his motion to amend, Plaintiff requests to amend the Amended Complaint to (1) indicate that he is bringing claims against Commissioner Roy and

4

Warden Dooley in both their individual and official capacities, and (2) add Kristi Cisar, an employee at MCF – Moose Lake, as a defendant in both her individual and official capacities.  (Pl.'s Mot. to Am. at 1-2, ECF No. 46.)  In the memorandum in support of his motion to amend, Plaintiff asserts that the capacity in which Commissioner Roy and Warden Dooley were being sued was not clear in his prior pleadings and, subsequent to the filing of his Amended Complaint, he received Cisar's name in response to a kite request.  (Pl.'s Mem. in Supp. of Mot. to Am. at 1-2, ECF No. 27.)  Plaintiff's motion and memorandum further state that "Cisar works in . . . the inmate accounts dept at MCF – Moose Lake," (Pl.'s Mem. in Supp. of Mot. to Am. at 1-2), and "was the contact person at MCF – Moose Lake through this whole ordeal and was in direct contact with [his] lawyer and family members in attempts to retrieve [his] bail money," (Pl.'s Mot. to Am. at 2).

Along with his motion to amend, Plaintiff submitted a Proposed Second Amended Complaint.[5]  (Prop. Second Am. Compl., ECF No. 26-1.)  The Proposed Second Amended Complaint lists Commissioner Roy, Warden Dooley, and Cisar as defendants, but does not specify the capacity in which they are being sued.  (*See* Prop. Second Am. Compl. at 1, 2.)  In addition to alleged violations of his constitutional rights, the Proposed Second Amended Complaint also appears to be raising a claim for false imprisonment under state law.  (Prop. Second Am. Compl. at 3, 4.)

---

[5] The Court notes that Plaintiff did not comply with Local Rule 15.1, which requires that any motion to amend a pleading "be accompanied by: (1) a copy of the proposed amended pleading, *and* (2) a version of the proposed amended pleading that shows — through redlining, underlining, strikeouts, or other similarly effective typographic methods — how the proposed amended pleading differs from the operative pleading."  D. Minn. LR 15.1(b) (emphasis added).  Plaintiff states that he was not aware he needed to submit a red-lined version of the proposed Second Amended Complaint, and has offered to correct the error if the Court so requires.  (Pl.'s Reply in Supp. of Mot. to Am. at 1, ECF No. 33.)

In total, the factual allegations contained in the Proposed Second Amended Complaint are as follows:

> I am filing this claim against the listed defendants for civil rights violations. My Fifth/Fourteenth Amendments [sic] rights for due process are in violation by the listed defends. [sic] which in turn lead [sic] me to be falsely imprisoned by the MN DOC. I was denied my bail money returned to me after posting bond. The defendant [sic] were directly at fault for this. I sent out 800.00 from my inmate account to post bail while housed at the DOC – Moose Lake Facility and was not released as the [state district court] allowed me to do upon reversal of my conviction. MN DOC and listed defendants conduct was willful, malicious, reckless and outrageous. Due to the defendants [sic] acts, I was not only held illegally, I also suffered mentally due to their actions. I have documents that will prove my complaint and ask the courts to here [sic] my complaint and proceed with a jury trial as I've requested.

(Prop. Second Am. Compl. at 4.) Plaintiff also checked a box indicating that exhibits were attached to the Proposed Second Amended Complaint, stating "Attached Exhibits (2, 3, 9, 11, 12, 13, 14)." (Prop. Second Am. Compl. at 4.) There were, however, no exhibits included with the Proposed Second Amended Complaint. Similar to the Amended Complaint, the Proposed Second Amended Complaint seeks only damages, "monetary and punitive relief in the amount of [$]50,000.00." (Prop. Second Am. Compl. at 4.)

## III. ANALYSIS

Defendants move to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and oppose Plaintiff's motion to amend on grounds that it is procedurally improper and the proposed amendments are futile.

### A. Legal Standard

"To withstand a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).   "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*   "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

"In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, [courts] hold a pro se complaint, however inartfully pleaded, to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quotation omitted).   But, "[a]lthough pro se complaints are to be construed liberally, 'they still must allege sufficient facts to support the claims

7

advanced.'"  *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  As the Eighth Circuit has explained, "[w]hen we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone*, 364 F.3d at 915.

### B. The "Complaint"

There is no single pleading containing all of the factual allegations purportedly underlying Plaintiff's claims.  Rather, the Court has given Plaintiff the greatest benefit of the doubt by cobbling together factual allegations and other pieces of relevant information from the Amended Complaint, Plaintiff's motion to amend, the Proposed Second Amended Complaint, and Plaintiff's opposition to Defendants' motion to dismiss.

Plaintiff has filed a number of exhibits along with his submissions.  (*See* ECF Nos. 25, 25-1, 25-2, 25-3, 32-1 at 1-5, 35.)  These exhibits appear to be documentary evidence Plaintiff believes support his claims.  With one exception discussed below, the Court has not considered these exhibits.  When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the Plaintiff.  *Martin*, 752 F.3d at 727.  In addition, "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, the motion

8

must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). The Court, however, may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). "[T]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (quotation omitted).

Some of the exhibits included with Plaintiff's opposition to the motion to dismiss are duplicative of the prior exhibits listed above that were attached to the initial Complaint and incorporated by reference into the Amended Complaint.[6] These exhibits will be considered as embraced by the Amended Complaint. The Court exercises its discretion, however, not to consider the remaining exhibits accompanying Plaintiff's submissions because such exhibits are not embraced by the Amended Complaint.[7] Although this Court liberally construes pro se complaints, "the court may not assume the role of advocate for the pro se litigant." *Zelenak v. Larson*, No. 15-cv-3315 (PJS/TNL), 2016 WL 6584926, at *6 (D. Minn. Oct. 6, 2016) (quotation omitted), *adopting report*

---

[6] *Compare* ECF No. 1-5 at 11 *with* ECF Nos. 25 at 4, 25-1 at 5; ECF No. 1-5 at 1 *with* ECF No. 25-3 at 2; ECF No. 1-5 at 12 *with* ECF No. 25-2 at 1; ECF No. 1-5 at 3 *with* ECF No. 25-3 at 1; ECF No. 1-5 at 2 *with* ECF No. 25-3 at 3; ECF No. 1-5 at 13 *with* ECF No. 25-2 at 2; ECF No. 1-5 at 4 *with* ECF No. 25-1 at 4; ECF No. 1-5 at 9-10 *with* ECF No. 25-2 at 3-4; ECF No. 1-5 at 6 *with* ECF No. 25-2 at 5; ECF No. 1-5 at 7-8 *with* ECF No. 25-2 at 6-7.

[7] The Court notes that the Proposed Second Amended Complaint also references exhibits, but they were not attached. Plaintiff's opposition to Defendants' motion to dismiss was filed the same day as his motion to amend and the Proposed Second Amended Complaint. Therefore, it is possible that Plaintiff was incorporating by reference the exhibits included with his opposition into his motion to amend and the Proposed Second Amended Complaint. Even if this were the case, five of the seven exhibits referenced are duplicative of exhibits the Court noted were attached to the initial Complaint and incorporated by reference into the Amended Complaint. *See supra* n.6. The remaining two exhibits are a kite in which Plaintiff provides his forwarding address upon release to "Records" ("Exhibit 2"), ECF No. 25 at 2, and a letter from Plaintiff's state public defender discussing the timeline for a decision from the Minnesota Court of Appeals and possible outcomes if the appellate court were to rule in Plaintiff's favor ("Exhibit 3"), ECF No. 25 at 3.

*and recommendation*, 2016 WL 6584910 (D. Minn. Nov. 4, 2016). Any other approach would essentially result in the Court sifting through Plaintiff's exhibits and guessing at how they relate to Plaintiff's allegations. *See id.* ("[I]t is not the Court's function to sift through Plaintiff's voluminous papers and essentially craft a complaint—factual allegations and bases for recovery—for her.").

### C. Constitutional Right at Issue

"Section 1983 creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (quotations and citations omitted). "To state a claim under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013); *see* 42 U.S.C. § 1983. The threshold inquiry in a § 1983 suit is identifying the specific constitutional right at issue. *Manuel*, 137 S. Ct. at 920.

Plaintiff alleges that his continued detention after paying the bail set by the state district court violated his right to due process under the Fifth and Fourteenth Amendments. (Mot. to Proceed with Compl. at 2, ECF No. 23; Prop. Second Am. Compl. at 3.) The Fifth Amendment applies only to federal actors and Plaintiff has identified only state actors as defendants. *Barnes v. City of Omaha*, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009) ("Fifth Amendment's Due Process Clause applies only to the federal government or federal actions"). Considering Plaintiff's pro se status, his references to the Fourteenth Amendment are sufficient to make clear that he is alleging that the

10

defendant state actors violated his right to due process under the Fourteenth Amendment. *See Lockhart-Beilke v. Peterson*, No. 13-cv-1208 (JRT/BRT), 2015 WL 5718910, at *7 n.10 (D. Minn. Sept. 29, 2015) ("The complaint explicitly references the Fourteenth Amendment, noting that the Fifth Amendment is made applicable to the states via the Fourteenth Amendment. That reference is sufficient to make clear that the complaint is asserting its due process claims via the Fourteenth Amendment.") (citations omitted).

In a footnote in their reply memorandum to the motion to dismiss, Defendants suggest that Plaintiff's constitutional claim may be more properly analyzed under the Fourth Amendment based on the Supreme Court's relatively recent ruling in *Manuel*. (Defs.' Reply at 3 n.2, ECF No. 30.) *Manuel* involved a § 1983 suit against a city and several of its police officers for unlawful arrest and pretrial detention based on allegedly fabricated evidence. *See Manuel*, 137 S. Ct. at 914-16. The Supreme Court held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 920. Prior to *Manuel*, existing case law in the Eighth Circuit analyzed claims for prolonged detention of a *pretrial* detainee under the Fourteenth Amendment rather than the Fourth Amendment. *See, e.g.*, *Lund v. Hennepin Cnty.*, 427 F.3d 1123, 1125-27 (8th Cir. 2005); *Luckes v. Cnty. of Hennepin*, 415 F.3d 936, 939 (8th Cir. 2005); *see also Goldberg v. Hennepin Cnty.*, 417 F.3d 808, 811 (8th Cir. 2005) ("Our opinions cited the plaintiff's liberty interest in a timely release, which suggests that the right to release from initially lawful detention is based upon the substantive component of the Due Process Clause, rather than the Fourth Amendment.").

11

In cases where a *convicted* individual has been held beyond the time he or she was supposed to be released, the Eighth Circuit Court of Appeals has framed the constitutional issue as a violation of the individual's right to due process under the Fourteenth Amendment, "recogniz[ing] a protected liberty interest in being free from wrongful, prolonged incarceration." *Davis v. Hall*, 375 F.3d 703, 712, 713, 714, 718 (8th Cir. 2004); *see, e.g.*, *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) ("Under the Eighth and Fourteenth Amendments, the plaintiffs had a clearly established right to be 'free from wrongful, prolonged incarceration.'") (quoting *Davis*, 375 F.3d at 712); *Slone v. Herman*, 983 F.2d 107, 110 (8th Cir. 1993) (holding, after order suspending sentence became final, "state lost its lawful authority to hold Slone," "any continued detention unlawfully deprived Slone of his liberty, and a person's liberty is protected from unlawful deprivation by the due process clause of the Fourteenth Amendment"); *cf. Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) (assuming without deciding prolonged detention violated clearly established constitutional right).

At this stage, Plaintiff's status at the time the state district court granted bail is not entirely clear. The Minnesota Court of Appeals "declin[ed] to direct the district court concerning [Plaintiff's] sentence on remand," noting that "when, as here, the error results from a plea agreement, the district court on remand is free to consider the effect that changes in the sentence have on the entire plea agreement and could entertain motions to vacate the conviction and the plea agreement." *Hazley*, 2016 WL 953051, at *2 (quotation omitted). In his opposition to Defendants' motion to dismiss, Plaintiff states that, following the remand, he was permitted to withdraw his prior guilty plea and then

bail was granted. (Mem. in Supp. of Mot. to Proceed with Compl. at 2.) Defendants, therefore, may in fact be correct that the Fourth Amendment governs here. Accepting all of Plaintiff's allegations as true and making all reasonable inferences in his favor, Plaintiff has alleged that Defendants continued to hold him after he paid the bail imposed by the state district court. Discovery will flush out the facts necessary to determine the precise constitutional framework under which Plaintiff's alleged unlawful detention should be evaluated.

### D. Official & Individual Capacity Claims

"A plaintiff may assert § 1983 claims against a public official acting in his individual capacity and in his official capacity." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007); *accord Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). The Eighth Circuit Court of Appeals has repeatedly emphasized the general rule that, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson*, 172 F.3d at 535; *see Baker*, 501 F.3d at 923; *see, e.g.*, *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016); *Remington v. Hoopes*, 611 F. App'x 883, 885 (8th Cir. 2015) (per curiam); *Kelly v. Ramsey Cnty. Sheriffs Office*, No. 08-cv-5028 (JMR/JJK), 2009 WL 511695, at *4 (D. Minn. Feb. 27, 2009). There must be "a clear statement or a specific pleading" indicating that the defendants are being sued in their individual capacities. *Remington*, 611 F. App'x at 885 (quotation omitted); *see Kelly*, 818 F.3d at 1075 ("Because Kelly's complaint does not include an express statement that she is suing the individual

defendants in their individual capacities, we consider her suit to be against the defendants in their official capacity.") (quotation omitted).

In the Amended Complaint and Proposed Second Amended Complaint, Plaintiff has not expressly indicated the capacity in which Defendants are being sued. Each individual defendant is only listed by name. Because Plaintiff has not expressly indicated in his pleadings the capacity in which Defendants are being sued, his claims could be viewed as being brought against Defendants only in their official capacities. *See, e.g.*, *Kelly*, 813 F.3d at 1075; *Remington*, 611 F. App'x at 885; *Baker*, 501 F.3d at 924; *Johnson*, 172 F.3d at 535. At the same time, albeit not in his Proposed Second Amended Complaint, Plaintiff has clearly stated that he is bringing claims against Defendants in both their official and individual capacities in his submissions in opposition to Defendants' motion to dismiss and in connection with his motion to amend. (Mot. to Am. at 1; Mem. in Supp. of Mot. to Am. at 2; Mot. to Proceed with Compl. at 3; Reply to Mot. to Dismiss at 1, ECF No. 34.) Given the clear intent expressed in these submissions to assert both official and individual-capacity claims against Defendants and Plaintiff's pro se status, the Court will, for purposes of these motions, analyze Plaintiff's claims as if brought against Defendants in their official and individual capacities. *See Kelly*, 2009 WL 511695, at *4 (finding pro se plaintiff's intent to assert both official and individual-capacity claims inferable from nature of allegations in complaint and response to motions to dismiss).

14

### 1. Official Capacity

"Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Gladden v. Richbourg*, 759 F.3d 960, 968 (8th Cir. 2014) (quotation omitted); *accord Remington*, 611 F. App'x at 885. "A suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" *Baker*, 501 F.3d at 925 (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)); *see Johnson*, 172 F.3d at 535 ("A suit against a public employee in his or her official capacity is merely a suit against the public employer."). Based on the information before the Court, Commissioner Roy, Warden Dooley, and Cisar are all employees of the Department of Corrections, an arm of the State of Minnesota. There are a number of problems with Plaintiff's official-capacity claims.

First, "[a] governmental entity cannot be held vicariously liable for its agent's acts under § 1983." *Brockington v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007); *accord Keefe v. City of Minneapolis*, 785 F.3d 1216, 1227 (8th Cir. 2015) ("Generally, a government entity is not liable for its employee's actions under § 1983."). Accordingly, "a plaintiff must identify a governmental policy or custom that caused the plaintiff's injury to recover from a governmental entity under § 1983." *Brockington*, 503 F.3d at 674; *accord White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) ("Since § 1983 does not allow for vicarious liability a plaintiff must identify a governmental policy or custom that caused the plaintiff's injury to recover under the statute.") (quotation omitted). "A

governmental policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy." *Brockington*, 503 F.3d at 674 (quotation omitted). "A governmental custom involves a pattern of persistent and widespread practices which become so permanent and well settled as to have the effect and force of law." *Id.* (quotation omitted). Plaintiff has not alleged that his continued detention after his bail funds were sent to the state district court was pursuant to a government policy or custom. Similarly, Plaintiff has not alleged that the manner in which his bail funds were handled was pursuant to a government policy or custom. Therefore, he has failed to state a claim against Defendants in their official capacities under § 1983. *See Kelly*, 813 F.3d at 1076; *see also Remington*, 611 F. App'x at 885-86.

Second, even if Plaintiff had alleged such facts, any official-capacity claims against Defendants are barred by the Eleventh Amendment. "The Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, as well as State Agencies, because such lawsuits are essentially for the recovery of money from the state." *King v. Dingle*, 702 F. Supp. 2d 1049, 1069 (D. Minn. 2010). Under the official-capacity framework, Plaintiff's claims against Defendants are viewed as being asserted against the Department of Corrections and thus the State of Minnesota itself. *See Baker*, 501 F.3d at 925; *Johnson*, 172 F.3d at 535. Because "Eleventh Amendment immunity extends to states and arms of the state," any official-capacity claims against the Department of Corrections and the State of Minnesota are barred by the Eleventh Amendment. *Thomas v. St. Louis Bd. of Police*

*Comm'rs*, 447 F.3d 1082, 1084 (8th Cir. 2006) (quotation omitted); *see Harris v. McSwain*, 417 F. App'x 594, 595 (8th Cir. 2011) (per curiam) (state department of corrections immune from suit); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (Eleventh Amendment bars suit against states and state agencies); *Ernst v. Hinchliff*, 129 F. Supp. 3d 695, 722 (D. Minn. 2015) ("[T]o the extent Plaintiff seeks any relief from the State of Minnesota or the [Department of Corrections] as an arm of the State of Minnesota, his claims are barred by the Eleventh Amendment."); *Saldana v. Crane*, No. 12-cv-573 (DWF/TNL), 2013 WL 4747961, at *14 (D. Minn. Sept. 4, 2013) (department of corrections entitled to Eleventh Amendment immunity as arm of the state).

For these reasons, the Court recommends that Defendants' motion to dismiss be granted and Plaintiff's motion to amend be denied with respect to claims against Defendants in their official capacities.

### 2. Individual Capacity

"Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "To state a claim under § 1983, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 676); *accord Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) ("To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights."). Accordingly, the Court examines Plaintiff's allegations with respect to each Defendant.

*See Jackson*, 747 F.3d at 543 ("In requiring a plaintiff to allege that each defendant was personally involved in the deprivation of his constitutional rights, we assess each defendant relative to his authority over the claimed constitutional violation.").

### a.  Commissioner Roy

Plaintiff alleges that Commissioner Roy "is the boss of . . . [Warden] Dooley and . . . in charge of [Plaintiff's] custody as stated by law in MN." (Am. Compl. at 5.) Plaintiff contends that Commissioner Roy "should have known about [his] situation, thus causing [him] to be held after [his] release [sic]." (Mem. in Supp. of Mot. to Proceed with Compl. at 3, ECF No. 24; *see* Mem. in Supp. of Mot. to Am. at 2 ("should have known or would have known that [Plaintiff's] constitutional rights were in violation").)

"Supervisors cannot be held vicariously liable under § 1983 for the actions of a subordinate." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1030 (8th Cir. 2012) (quotation omitted); *see Iqbal*, 556 U.S. at 676. "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quotation omitted); *accord Jackson*, 747 F.3d at 543. Plaintiff has not alleged that Commissioner Roy was directly involved in transferring funds from Plaintiff's inmate account to the state district court in order to post bail or pleaded any facts showing how Commissioner Roy should have known about Plaintiff's situation. Nor has Plaintiff alleged that Commissioner Roy failed to adequately train corrections employees. And, although Plaintiff has alleged that Commissioner Roy supervises Warden Dooley, Plaintiff has not pleaded any facts

showing that Commissioner Roy was on notice of a pattern of unconstitutional conduct committed by his subordinates. *See Parrish*, 594 F.3d at 1002.

In essence, Plaintiff's claim against Commissioner Roy is "by virtue of . . . [his] position[] within the prison system." *Jackson*, 747 F.3d at 544. The Eighth Circuit has held that "[t]he authority of the state DOC director to make prison-wide policy decisions may be sufficient to give rise to liability under § 1983." *Id.* at 537; *see, e.g.*, *Cooper v. Schriro*, 189 F.3d 781, 783-84 (8th Cir. 1999) (inmate's allegation that DOC director "authorized the denial of printed materials is sufficiently specific to state a section 1983 claim for actions allegedly taken directly by her"); *Messimer v. Lockhart*, 702 F.2d 729, 732 (8th Cir. 1983) (allegations regarding policy decisions for housing protective-custody inmates stated claim against DOC director based on director's statutory duties to administer the department and supervise all facilities under department's control); *see also Steadman v. Roy*, No. 14-cv-3442 (MJD/JSM), 2015 WL 1954402m, at *9-10 (D. Minn. Mar. 23, 2015) (allegations that DOC commissioner failed to change practice/policy of adding conditional release terms to inmates' sentences after state court of appeals held that such terms could only be imposed by sentencing court stated claim against DOC commissioner in his individual capacity), *adopting report and recommendation*, 2015 WL 1954447 (D. Minn. Apr. 29, 2015). Thus, "[e]ven if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." *Jackson*, 747 F.3d at 543 (quotation omitted).

19

Under Minnesota law, "[t]he Department of Corrections is . . . under the control and supervision of the commissioner of corrections."  Minn. Stat. § 241.01, subd. 1. Among other powers and duties, Minnesota law directs Commissioner Roy to administer all state correctional facilities; "[t]o organize the department and employ personnel . . . [he] deems necessary to discharge the functions of the department, including a chief executive officer for each facility"; and "[t]o define the duties of these employees and to delegate to them any of . . . [his] powers, duties and responsibilities, subject to . . . [his] control and the conditions . . . [he] prescribes." *Id.*, subd. 3a(d), (g), (h).  Commissioner Roy also has the power to prescribe rules for inmate accounts. *See* Minn. Stat. § 241.08.

As stated above, however, Plaintiff is not alleging that his constitutional rights were violated as the result of any particular policy under Commissioner Roy's control. *See Marchant v. City of Little Rock*, 741 F.2d 201, 205 (8th Cir. 1984) ("This is not a case where a constitutional violation is alleged to have occurred as a direct result of specific administrative policies under the control of the defendant."); *cf. Messimer*, 702 F.2d at 732 ("Here, however, the plaintiffs are not complaining about isolated instances of alleged mistreatment; they are complaining about policy decisions made by those in charge of the prison.").  Accordingly, notwithstanding Commissioner Roy's statutorily enumerated duties and powers administering the state's correctional facilities and supervising corrections personnel, Plaintiff has not alleged sufficient personal involvement of Commissioner Roy in the alleged constitutional violation. *See Marchant*, 741 F.2d at 205.  Therefore, the Court likewise recommends that Defendants' motion to

dismiss be granted and Plaintiff's motion to amend be denied with respect to Plaintiff's claim against Commissioner Roy in his individual capacity.

### b.   Warden Dooley

Plaintiff alleges that Warden Dooley "was in charge of [his] custody as acting Warden at MCF – Moose Lake at the time of the incident." (Am. Compl. at 5.) Plaintiff also contends that Warden Dooley "should have known about [his] situation, thus causing [him] to be held after [his] release [sic]." (Mem. in Supp. of Mot. to Proceed with Compl. at 3; *see* Mem. in Supp. of Mot. to Am. at 2 ("should have known or would have known that [Plaintiff's] constitutional rights were in violation").)

Under Minnesota law, Warden Dooley is in charge of all inmate funds. Minn. Stat. § 241.08, subd. 1 ("The chief executive officer of each institution under the jurisdiction of the commissioner of corrections shall have the care and custody of all money belonging to inmates thereof which may come into the chief executive officer's hands, keep accurate accounts thereof and pay them out under rules prescribed by law . . . or by the commissioner of corrections, taking vouchers therefor.") Plaintiff alleges that he contacted the inmate accounts department at MCF – Moose Lake and his attorney and sister contacted MCF – Moose Lake trying to figure out the status of his bail funds, all to no avail. (Mot. to Proceed with Compl. at 2; *see* Mem. in Supp. of Mot. to Am. at 1; ECF No. 1-5 at 9-10; ECF No. 1-5 at 6; ECF No. 1-5 at 7-8.) At one point, Plaintiff even asked MCF – Moose Lake to stop payment on the check, so that his funds could be returned to him and sent to his forwarding address so that he could pay his bail. (ECF No. 1-5 at 6.)

It is true "that the warden's general supervisory authority over prison operations does not make him [or her] liable under § 1983." *Jackson*, 747 F.3d at 545 (citing cases); *accord Reynolds*, 636 F.3d at 981 ("It is settled . . . that 'a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.'") (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)). Although a closer call, the Court concludes that Plaintiff has alleged more than Warden Dooley's general supervisory authority over MCF – Moose Lake. Again accepting all of Plaintiff's allegations as true and making all reasonable inferences in his favor, Warden Dooley's statutory duties with respect to inmate funds combined with Plaintiff's allegations that he and individuals on his behalf repeatedly contacted MCF – Moose Lake regarding his bail funds allege sufficient personal involvement of Warden Dooley in the events in question and alleged constitutional violation. *See Jackson*, 747 F.3d at 545 ("Given Crawford's statutory duties, including those associated with administration of the [program at issue], Jackson's complaint alleged sufficient personal involvement as to MDOC Director Crawford."); *see also Steadman*, 2015 WL 1954402, at \*11. Accordingly, the Court recommends that Defendants' motion to dismiss be denied and Plaintiff's motion to amend be granted with respect to Plaintiff's claim against Warden Dooley in her individual capacity.

### c.    Cisar

Although Cisar is listed as a defendant, the Proposed Second Amended Complaint contains no allegations regarding her involvement in the events in question. Based on Plaintiff's other submissions, Plaintiff alleges that Cisar works in the inmate accounts

department at MCF – Moose Lake and "handled this matter."  (Mot. to Proceed With Compl. at 3; *see* Mot. to Am. at 2; Mem. in Supp. of Mot. to Am. at 1.)  Plaintiff also alleges that Cisar "was in direct contact with [his] lawyer and family members in attempts to retrieve [his] bail money."  (Mot. to Am. at 2; *see* Mem. in Supp. of Mot. to Am. at 1.)

As best as this Court is able to tell, the following additional information can be gleaned from the exhibits attached to the initial Complaint and incorporated by reference into the Amended Complaint.  Between May 10 and 13, 2016, Plaintiff engaged in kite correspondence with an individual in inmate accounts identified only as "I/m Accts." (ECF No. 1-5 at 2, 3.)  For purposes of these motions only, the Court assumes that the identity of "I/m Accts" is Cisar.  On May 10, Plaintiff requested information on "how [he] can pay [his] bail (800.00) to Hennipen [sic] Cty [sic] Courts."  (ECF No. 1-5 at 3.) Plaintiff stated that he is waiting for certain paperwork to be processed for his release, "but want[s] to have [his] bail paid[,] because it's [his] understanding that [he] will be given a debit card upon [his] release . . . and [he does not] have anyone to take money off [his] card."  (ECF No. 1-5 at 3.)  Cisar responded the following day, directing Plaintiff to "[s]ubmit a voucher payable to the county for what [he] want[s] sent/paid"; "[a]ttach an addressed envelope"; and she "will process the check, put it in the envelope and get it mailed out."  (ECF No. 1-5 at 3.)  Cisar also told Plaintiff that he could "pay them with [his] debit card once [he is] released."  (ECF No. 1-5 at 3.)  On May 12, Plaintiff provided "the requested documents . . . need[ed] to send off [his] money to post-bail [sic] in Hennipen [sic] Cty [sic] Court."  (ECF No. 1-5 at 2.)  Plaintiff requested "confirmation

23

that funds were sent out."  (ECF No. 1-5 at 2.)  Cisar responded the next day, stating "Done today."  (ECF No. 1-5 at 2.)  An inmate trust account receipts and disbursements record for Plaintiff's account shows a corresponding transaction in the amount of $800 for "Hennepin County Criminal Court" on May 13, 2016.  (ECF No. 1-5 at 1.)

Considering all of these factual allegations together as a whole, the Court concludes that Plaintiff has alleged sufficient facts showing the personal involvement of Cisar in the alleged constitutional violation.    Accordingly, the Court similarly recommends that Defendants' motion to dismiss be denied and Plaintiff's motion to amend be granted with respect to Plaintiff's claim against Cisar in her individual capacity.

### 3.  Summary

Liberally construing Plaintiff's submissions, the Court has interpreted Plaintiff's claims to be asserted against Defendants in their official and individual capacities.  Any claims against Defendants in their official capacities fail because Plaintiff has not alleged that his constitutional rights were violated as the result of a government policy or custom and, in any event, are barred by the Eleventh Amendment.  With respect to Plaintiff's individual-capacity claims, the Court concludes that Plaintiff has failed to allege sufficient personal involvement of Commissioner Roy and therefore failed to state a claim against him in his individual capacity.  As for Warden Dooley and Cisar, however, Plaintiff has alleged sufficient facts showing their personal involvement to state a claim against each of them in their individual capacities.

24

E. *Heck v. Humphrey*

Without much discussion, Defendants contend that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* considered the availability of a § 1983 suit when the constitutional claims asserted called into doubt the lawfulness of a state conviction and resulting sentence. 512 U.S. at 479, 483. The plaintiff alleged that the defendants, "acting under color of state law, had engaged in an unlawful, unreasonable, and arbitrary investigation leading to [his] arrest; knowingly destroyed evidence which was exculpatory in nature and could have proved [his] innocence; and caused an illegal and unlawful voice identification procedure to be used at [his] trial." *Id.* at 479 (quotation omitted).

In considering whether the plaintiff's § 1983 suit should be allowed to proceed, the Supreme Court noted that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. The Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-87. Accordingly,

25

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487 (footnotes omitted).

While Defendants assert that Plaintiff should have sought certain other relief prior to filing suit under § 1983 and respond to Plaintiff's contention that he has met *Heck*'s favorable-termination requirement, they do not address the predicate issue: whether a judgment in Plaintiff's favor on his constitutional claim would necessarily imply the invalidity of his state conviction and sentence.  Again, assuming the truth of the limited factual allegations presently before the Court, the fundamental question of the lawfulness of Plaintiff's continued detention after he satisfied the financial requirements of a court order allowing for his release does not appear to imply necessarily the invalidity of Plaintiff's state conviction and sentence.   Accordingly, at this early stage, the Court concludes that Plaintiff's constitutional claim is not foreclosed by *Heck*.  *See Steadman*, 2015 WL 1954447, at *1 n.1 (reserving application of *Heck* to § 1983 claim to be addressed "on a full record, after discovery is complete").

## F.  Compensable Injury

Lastly, Defendants assert that Plaintiff has failed to allege a compensable injury because "he presumably received credit toward his prison sentence for every day he was

26

incarcerated at the Hennepin County Jail." (Defs.' Mem. in Supp. at 7.) According to Defendants, allowing Plaintiff "to receive monetary damages for any alleged unlawful incarceration and credit for his underlying sentence would permit a double recovery." (Defs.' Mem. in Supp. at 7.)

Simply stated, questions of double recovery are premature at this juncture. Even if the Court were to assume that Plaintiff received credit for the days of his alleged unlawful detention, Plaintiff also seeks relief for mental/emotional injury as well as punitive damages. Plaintiff's ability to recover such damages is by no means a foregone conclusion. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered in custody *without a prior showing of physical injury* . . . ." 42 U.S.C. § 1997e(e) (emphasis added); *see, e.g., Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012) (denial of compensatory damages on § 1983 claims proper under § 1997e(e) where there was no allegation of physical injury). Nominal damages, however, may be available. *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).

Punitive damages are also available upon a proper showing. *Id.* "A factfinder may assess punitive damages in a section 1983 action when a 'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Id.* at 724 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiff has alleged that he and others repeatedly contacted MCF – Moose Lake regarding his bail to no avail and Defendants' lack of response was malicious. (Mem. in Supp. of Mot. to Proceed with Compl. at 2; Prop.

27

Second Am. Compl. at 4.)  During discovery, it is possible that Plaintiff may learn facts allowing a reasonable factfinder to conclude that Warden Dooley and Cisar acted with evil motive or intent or demonstrated reckless or callous indifference to Plaintiff's federally protected rights.  Defendants' argument that Plaintiff has failed to allege a compensable injury is unavailing.

### G. Recommended Disposition

Based on the foregoing, the Court recommends that Defendants' motion to dismiss be granted in part with respect to Plaintiff's official-capacity claims and claim against Commissioner Roy in his individual capacity, and otherwise denied.  Because the Court has construed Plaintiff's "Motion to Proceed with Complaint" as an opposition to Defendant's motion to dismiss the Court also recommends that the "Motion to Proceed with Complaint" be denied.[8]  The Court further recommends that Plaintiff's motion to amend be denied in part with respect to Plaintiff's official-capacity claims and claim against Commissioner Roy in his individual capacity, and granted in part with respect to Plaintiff's claims against Warden Dooley and Cisar in their individual capacities, including but not limited to the state law claim for false imprisonment.[9]  *See Wong v. Minn. Dep't Human Servs.*, 820 F.3d 922, 928 (8th Cir. 2016) ("When a federal district court has original jurisdiction over a civil action, the court may exercise supplemental jurisdiction over all state-law 'claims that are so related to claims in the action within

---

[8] In light of Plaintiff's pro se status, the Court emphasizes that the recommended denial of the "Motion to Proceed with Complaint" is not a recommendation that Plaintiff's suit be dismissed in its entirety.
[9] As noted above, Plaintiff appears to be raising a state law claim for false imprisonment. In their response to Plaintiff's motion to amend, Defendants did not address this claim.

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'") (quoting 28 U.S.C. § 1367(a)).

## IV. FBA PRO SE PROJECT

Finally, the Court will also be referring Plaintiff to a program of the Minnesota Chapter of the Federal Bar Association ("FBA") known as the FBA Pro Se Project, where volunteer lawyers donate their time to assist unrepresented individuals.[10]  Plaintiff should bear in mind that, while one of the FBA Pro Se Project's volunteer lawyers may agree to represent him, *there is no requirement that a volunteer lawyer do so or that any lawyer be appointed to assist him*.

[Continued on next page.]

---

[10] This referral will be done by separate letter.  The Court's referral will issue along with this Report & Recommendation, so that Plaintiff may begin working with the FBA's Pro Se Project.

## V. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss (ECF No. 13) **BE GRANTED IN PART AND DENIED IN PART** as set forth herein.

2. Plaintiff's Motion to Proceed With Complaint (ECF No. 23) **BE DENIED** as set forth herein.

3. Plaintiff's Motion to Amend Complaint (ECF No. 26) **BE GRANTED IN PART AND DENIED IN PART** as set forth herein.

Date: November____2_____, 2017 　　　　　　_____*s/ Tony N. Leung*_____
　　　　　　　　　　　　　　　　　　　Tony N. Leung
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge
　　　　　　　　　　　　　　　　　　　for the District of Minnesota

　　　　　　　　　　　　　　　　　　　*Hazley v. Roy et al.*
　　　　　　　　　　　　　　　　　　　Case No. 16-cv-3935 (SRN/TNL)

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).