# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Glenn Kevin Hazley,                          Case No. 16-cv-03935 (ECT/ECW)

      Plaintiff,

  v.

                                **REPORT AND RECOMMENDATION**

Becky Dooley, Kristi Cisar,
and Tom Roy,

      Defendants.

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. No. 50); Plaintiff Glenn Kevin Hazley's Motion to Proceed in Response to Defendant's [sic], Roy's, Cisar's, and Dooley's Motion to Dismiss (Dkt. No. 58); and Plaintiff's Motion to Response [sic] to Defendants' Letter Dated Sept. 21, 2018 (Dkt. No. 70). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. No. 50) be granted in part and denied in part; that Plaintiff's Motion to Proceed in Response to Defendant's [sic], Roy's, Cisar's, and Dooley's Motion to Dismiss (Dkt. No. 58) be denied as moot; and that Plaintiff's Motion to Response [sic] to Defendants' Letter Dated Sept. 21, 2018 (Dkt. No. 70) be denied.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    Procedural History of Plaintiff's Case

Plaintiff Glenn Kevin Hazley ("Hazley") initiated the present action under 42 U.S.C. § 1983 against Becky Dooley ("Warden Dooley"), Warden of the Minnesota Correctional Facility located in Moose Lake, Minnesota ("MCF-Moose Lake"), and Tom Roy, Commissioner of the Minnesota Department of Corrections ("Commissioner Roy") on November 17, 2016.  (Dkt. No. 1.)  Hazley subsequently amended his Complaint.  (Dkt. No. 8.)  In his Amended Complaint, Hazley alleged that MCF-Moose Lake staff "denied [me] an opprotunity [sic] to bail out from jail after my case was overturned by the courts May 2016, MCF-Moose Lake purposely held my money so I could not post my bail."  (Dkt. No. 8 at 4.)  He further alleged that:

> I was held illegally until the day of my trial which was in July 2015 [sic].  So I claim negligence by Becky Dooley because she was in charge of my custody as acting Warden at MCF-Moose Lake at the time of the incident and Commissioner, Tom Roy, because he is the boss of Ms. Dooley and as well in charge of my custody as stated by law in MN.

(*Id.* at 4-5.)

Commissioner Roy and Warden Dooley filed a motion to dismiss the Amended Complaint, arguing that Hazley could not prevail on his claims against them in their official capacities, the claims against them improperly challenged the validity of Hazley's incarceration, and Hazley suffered no damage because he was ultimately convicted of the underlying offense.  (Dkt. Nos. 13-14.)  In their Reply Memorandum in support of the motion to dismiss the Amended Complaint, Defendants asserted Hazley failed to allege

any actions taken by them personally against Hazley and that Hazley failed to allege any viable violations of his constitutional right to bail. (Dkt. No. 30.)

In response, Hazley filed a motion to amend the Amended Complaint. (Dkt. No. 26.) As part of that motion, Hazley sought permission to amend the Amended Complaint to: (1) assert he was bringing claims against Commissioner Roy and Warden Dooley in both their individual and official capacities, and (2) add Kristi Cisar, an employee at MCF-Moose Lake, as a defendant in both her individual and official capacities. (*Id.*) Along with his motion to amend, Plaintiff submitted a Proposed Second Amended Complaint. (Dkt. No. 26-1.) The Proposed Second Amended Complaint listed Commissioner Roy, Warden Dooley, and Cisar as defendants, but failed to specify the capacity in which they were being sued. (*Id.* at 1, 2.) The factual allegations contained in the Proposed Second Amended Complaint were as follows:

> I am filing this claim against the listed defendants for civil rights violations. My Fifth/Fourteenth Amendments [sic] rights for due process are in violation by the listed defends. [sic] which in turn lead [sic] me to be falsely imprisoned by the MN DOC. I was denied my bail money returned to me after posting bond. The defendant [sic] were directly at fault for this. I sent out 800.00 from my inmate account to post bail while housed at the DOC – Moose Lake Facility and was not released as the [state district court] allowed me to do upon reversal of my conviction. MN DOC and listed defendants [sic] conduct was willful, malicious, reckless and outrageous. Due to the defendants [sic] acts I was not only held illegally, I also suffered mentally due to their actions. I have documents that will prove my complaint and ask the courts to here [sic] my complaint and proceed with a jury trial as I've requested.

(*Id.* at 4.) Warden Dooley and Commissioner Roy opposed the motion to amend. (Dkt. No. 29.)

In his Report and Recommendation, United States Magistrate Judge Tony N. Leung recommended that Defendants' motion to dismiss be granted in part with respect to Hazley's official-capacity claims and claim against Commissioner Roy in his individual capacity and otherwise recommended denying the motion to dismiss. (Dkt. No. 43 at 28.) Magistrate Judge Leung further ordered that Hazley's motion to amend be denied in part with respect to Hazley's official-capacity claims against Defendants and the claim against Commissioner Roy in his individual capacity. (*Id.*) Magistrate Judge Leung granted the motion to amend with respect to Hazley's claims against Warden Dooley and Cisar in their individual capacities, including but not limited to Hazley's state law claim for false imprisonment. (*Id.*) Defendants objected to the Report and Recommendation. (Dkt. No. 45.) United States District Judge Susan Richard Nelson adopted the Report and Recommendation and ordered Hazley to take the following actions:

> Plaintiff shall, within 30 days of the date of this Order, file a Second Amended Complaint, which clearly sets forth his claims against Defendant Dooley and Defendant Cisar in their individual capacities, and attaches any relevant exhibits in support. . . ."

(Dkt. No. 47 at 14.) Judge Nelson also dismissed Hazley's claims against Commissioner Roy and denied Hazley's motion to amend to add claims against Commissioner Roy in his individual capacity. (*Id.*)

Hazley subsequently filed the operative Third Amended Complaint (Dkt. No. 49) that is the subject of Defendants' present motion to dismiss.

4

**B.      Allegations in the Third Amended Complaint**

In his Third Amended Complaint, Hazley names Warden Dooley, Cisar, and Commissioner Roy as defendants and specifically asserts he is suing these Defendants in their individual capacities.  (Dkt. No. 49 ¶¶ 7-9.)  Hazley alleges that he is suing Defendants for the "violation of Plaintiff's civil rights to Due Process secured by the United States Constitution or by Federal Law and guaranteed by the Fourteenth Amendment to the Constitution of the United States to deprive Plaintiff of property, due course of justice, and wrongful, prolonged incarceration in violation of 42 U.S.C. § 1983 and for the violation of Minnesota State Common Law for false imprisonment."  (*Id.* at 1.)

The factual background of the Third Amended Complaint alleges Hazley was initially charged with Burglary in the Third Degree on August 31, 2014.  (*Id. ¶* 10.)  Hazley pleaded guilty in a negotiated plea agreement.  (*Id.* ¶ 11.)  Hazley agreed to be sentenced under the repeat-offender statute, with the understanding that his sentence, an imposed but stayed 60-month term of imprisonment, would be both an upward durational departure and a downward dispositional departure.  *State v. Hazley*, No. A15-1418, 2016 WL 953051, at *1 (Minn. Ct. App. Mar. 14, 2016).  The district court, recognizing that the sentence was a downward-dispositional and upward-durational departure, sentenced appellant to 60 months in prison, stayed execution of the sentence for five years, and ordered appellant to serve 365 days in jail.  *Id.*  The district court based the upward departure on the repeat-offender statute, Minnesota Statute § 609.1095, subdivision 4.  *Id.*  Part of Hazley's sentence included probation.  (Dkt. No. 49 ¶ 13.)

5

On June 4, 2015, Hennepin County District Court Judge Bransford found that Hazley violated the terms and conditions of his probation, revoked his probation, and executed the 60-month sentence. (*Id.* ¶ 14.)  Hazley appealed the district court's decision. (*Id.* ¶ 15.)  On March 14, 2016, the Minnesota Court of Appeals reversed the district court (*id.* ¶ 16), concluding that the repeat-offender statute did not apply to Hazley's sentence. *See Hazley*, 2016 WL 953051, at *2.  The Minnesota Court of Appeals remanded the case to the district court, stating that "the district court on remand is free to consider the effect that changes in the sentence have on the entire plea agreement and could entertain motions to vacate the conviction and the plea agreement." *Id.* (quotation marks omitted).  On or about May 25, 2016, the Minnesota Court of Appeals issued its March 14, 2016 judgment. (Dkt. No. 49 ¶ 24.)

Hazley withdrew his guilty plea on May 2, 2016. (*Id.* ¶ 17.)  On the same day, the district court issued a conditional release order, setting bail in the amount of $8,000 or a cash alternative of $800. (*Id.* ¶ 18; Dkt. No. 25 at 4.)[1]  On May 10, 2016, Hazley—who was being held pending bail at MCF-Moose Lake—sent a kite form to MCF-Moose Lake "Inmates Accounts," inquiring how to pay his bail from his inmate account. (*Id.* ¶ 19; Dkt. No. 25-3 at 1.)  In this kite form, Hazley stated he was waiting for certain paperwork to be processed for his release, but that he wanted to have his bail paid because it was his

---

[1]      While Hazley did not attach the exhibits referenced in his Third Amended Complaint to that pleading, based on its review of the allegations in the Third Amended Complaint, the Court concludes that the referenced exhibits are those attached to Docket No. 25.  The Court considers the exhibits referenced in the Third Amended Complaint as part of the motion to dismiss because they are embraced by the pleading. (*See infra* at Section II; Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").)

understanding that he would be given a debit card upon his release and he did not have anyone to take money off his card. (*Id.* ¶ 20; Dkt. No. 25-3 at 1.) On May 11, 2016, "I/m Accts" responded to the kite and instructed Hazley to submit a voucher payable to the county that he wanted the payment to be made and an addressed envelope. (Dkt. No. 25-3 at 1.) On May 12, 2016, Hazley sent a kite to "Inmate Accounts" providing the requested documents for the transfer of funds to Hennepin County or order to post bail. (Dkt. No. 49 ¶ 21; Dkt. No. 25-3 at 3.) On May 13, 2016, Hazley received a response from "I/m Accts" stating "Done today." (Dkt. No. 49 ¶ 22; Dkt. No. 25-3 at 3.) On the same day, a transaction was made from Hazley's MCF-Moose Lake trust account to the Hennepin County Criminal Court. (Dkt. No. 49 ¶ 23; Dkt. No. 25-3 at 2.)

On June 16, 2016, Hazley completed a Hennepin County inmate grievance form, regarding his "bail check."[2] (Dkt. No. 49 ¶ 25; Dkt. No. 25-1 at 4.) According to Hazley, he was being held due to the negligence of MCF-Moose Lake or Hennepin County. (Dkt. No. 25-1 at 4.) Hazley requested as follows: "If no one here can help me, direct me to who can help me with this matter. Moose-Lake-MCF is not an option." (*Id.*) On or about June 19, 2016, Hazley sent a letter to Judge Bransford, complaining he had not been released and had been unable to get any answers on the processing of his bail money. (Dkt. No. 49 ¶ 26; Dkt. No. 25-2 at 3-4.)

On or about June 21, 2016, apparently because the check was not received by Hennepin County, Hazley sent a letter to the inmates' accounts department at MCF-

---

[2]    The Court notes that it appears Hazley was transferred from MCF-Moose Lake to the Hennepin County Detention Center sometime between May and June 2016.

Moose Lake asking that MCF-Moose Lake stop payment on the prior bail check and that it send the funds to him directly at a forwarding address. (Dkt. No. 49 ¶ 27; Dkt. No. 25-2 at 5.) According to Hazley, this was the second letter he had sent to "Inmate Accounts." (Dkt. No. 25-2 at 5.) Hazley also stated in the letter that multiple other people, including staff at the Hennepin County Jail, Hazley's attorney, and members of Hazley's family, had reached out Inmate Accounts on his behalf regarding the funds. (*Id.*) Hazley asked that these funds be sent to him at the address provided as soon as possible. (*Id.*)

On or about June 23, 2016, Hazley sent a letter to "DOC Inspection & Enforcement Unit" seeking help regarding the status of his funds. (Dkt. No. 49 ¶ 28; Dkt. No. 25-2 at 6.) In this letter, Hazley claimed he was being unjustly held at the Hennepin County Detention Center due to MCF-Moose Lakes' failure to refund his bail funds. (Dkt. No. 25-2 at 6.) According to Hazley, he had been incarcerated since May 2, 2016, the date that the district court allegedly allowed him to post bail, even though he had sent money from MCF-Moose Lake to Hennepin County District Court. (*Id.*) Instead, Hazley asserted that the money was "no where to be found" causing him "to be still incarcerated unjustly." (*Id.*) On or about July 2, 2016, Hazley completed a Hennepin County inmate grievance form related to the failure to return his bail funds. (Dkt. No. 49 ¶ 29.)

Hazley alleges he was incarcerated from May 13, 2016 to July 18, 2016 despite providing money for his bail and his several requests that MCF-Moose Lake send his bail money to the Hennepin County Criminal Courts. (*Id.* ¶¶ 30-32.) On about July 18, 2016,

the date of his trial on the burglary charge, MCF-Moose Lake returned Hazley's bail money. (*Id.* ¶ 33.) Hazley was found guilty on or about August 8, 2016 and sentenced to prison with a release date of December 19, 2017. (*Id.* ¶¶ 34-35.)

As it relates to Warden Dooley,[3] Hazley alleges that she denied him the ability to post bail due to "MCF-Moose Lake's customs and policies." (*Id.* ¶¶ 50-51.) In particular, Hazley alleged that MCF-Moose Lake's policy requiring personal authorization for the cancellation of his check for bail precluded his legal counsel from authorizing the stop of payment on June 21, 2016 and having the funds sent to Hazley's requested forwarding address so that he could pay his bail. (*Id.* ¶¶ 50-51, 57-63.) Hazley asserts that he was unable to personally authorize the cancellation of his check for bail at MCF-Moose Lake because he was being held in the Hennepin County Detention Center. (*Id.* ¶ 58.) In addition, Hazley asserts Dooley harmed him as the result of customs and policies of MCF-Moose Lake related to not responding to his or his attorney's requests that his bail check be cancelled and his request for the return of his bail funds when two unidentified employees failed to respond to these requests. (*Id.* ¶¶ 67-70.) Hazley maintains that Warden Dooley is responsible for all inmate funds. (*Id.* ¶ 71.) According to Hazley, Warden Dooley "knew or should have known about" his situation. (*Id.* ¶ 72.) Hazley asserts Warden Dooley unlawfully restrained his freedom of movement or personal liberty from May 13, 2016 to July 18, 2016 by not sending the $800 bail to

---

[3] The Court will not address in detail the factual allegations against Commissioner Roy in the Third Amended Complaint for the reasons stated forth below in Section III.A of this Report and Recommendation.

Hennepin County Criminal Court and by not granting his request to stop payment on the check and returning the funds to him at his forwarding address. (*Id.* ¶¶ 73-77.)

With regard to Cisar, Hazley alleges that Cisar is the inmate accounts supervisor at MCF-Moose Lake and worked on or handled his matter at MCF-Moose Lake related to his bail money. (*Id.* ¶¶ 8, 81.) Hazley maintains that Cisar was in charge of Inmate Accounts at MCF-Moose Lake and knew or should have known about his bail situation. (*Id.* ¶¶ 82-83.) Cisar was in direct contact with him, his public defender, and his sister regarding his attempts to retrieve his bail money. (*Id.* ¶¶ 84-86, 102.) Hazley also alleges that between May 10, 2016, and May 13, 2016, Cisar corresponded with him as "I/m Accts" as part of his attempts to post bail in Hennepin County and that part of this correspondence represented to Hazley that the bail funds had been sent to Hennepin County. (*Id.* ¶¶ 87-93.) Hazley also alleges that Cisar harmed him by not sending the check to Hennepin County and by not following up with him regarding the hold on his bail check. (*Id.* ¶¶ 94-101.)

Hazley further alleges that Cisar denied him the opportunity to stop payment on his check for bail due to MCF-Moose Lake's custom and policy of requiring personal authorization for the cancellation, which precluded the return of the funds to his forwarding address so that he could pay his bail. (*Id.* ¶¶ 101-12.) As stated previously, Hazley alleges that he was unable to personally authorize the cancellation of his check for bail at MCF-Moose Lake because he was being held in the Hennepin County Detention Center. (*Id.* ¶ 104.) In addition, Hazley asserts Cisar harmed him as the result of MCF-Moose Lake's customs and policies of not responding to his or his attorney's requests

that his bail check be cancelled and his request for the return of his bail funds when

unidentified employees failed to respond to these requests.  (*Id.* ¶¶ 113-16.)  Hazley also

asserts that Cisar unlawfully restrained his freedom of movement or personal liberty by

not granting his request to stop payment on the check and returning the funds to him at

his forwarding address.  (*Id.* ¶ 117.)

## II.   <u>STANDARD OF REVIEW</u>

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the pleadings are construed in the light most favorable to the non-moving party, and the

facts alleged in the complaints must be taken as true.  *See Ashley County, Ark. v. Pfizer,*

*Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all

reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601

F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under

Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil

Procedure 8 and meet the principles articulated by the United States Supreme Court in

*Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading

standard articulated by Rule 8 "does not require detailed factual allegations, but it [does

demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations

omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

> Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:
>
> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). *Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

## III.   <u>ANALYSIS</u>

### A.   **Claims Against Commissioner Roy**

Defendants in their present motion to dismiss argue that the Third Amended Complaint impermissibly includes claims against Commissioner Roy because the claims against him in his official capacity were dismissed and the motion to amend to add claims against him in his individual capacity was denied. (Dkt. No. 51 at 4.) Hazley's only response as to Defendants' entire motion was: "Proceed with my Complaint as previously ordered by Honorable Tony N. Leung and deny Defendants [sic] Motion to Dismiss." (Dkt No. 58; *see also* Dkt. No. 59.) Magistrate Judge Leung recommended dismissal of the official-capacity claims against Commissioner Roy and denial of Hazley's motion to

amend to add individual-capacity claims against Commissioner Roy, and District Judge Nelson dismissed those official-capacity claims and denied Hazley's motion to amend to add the individual-capacity claims.  (Dkt. No. 47 at 14.)  There is no pending motion to amend from Hazley as it relates to Commissioner Roy.  Therefore, the allegations and claims in the Third Amended Complaint against Commissioner Roy are in violation of the Court's July 17, 2018 Order and should be stricken from the Third Amended Complaint.

**B.    Qualified Immunity as to Warden Dooley and Cisar**

Defendants Warden Dooley and Cisar move to dismiss Plaintiff's Third Amended Complaint based on qualified immunity, arguing that Hazley's pleading fails to establish a clear constitutional right that was violated, and is devoid of specific facts establishing acts by Defendants Dooley and Cisar depriving him of any such right.  (Dkt. No. 51 at 5.)

"Qualified immunity shields a public official from suit for civil damages when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The "driving force" behind the creation of the doctrine was to eliminate insubstantial claims against government officials prior to discovery.  *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987).  Determining whether an official is entitled to qualified immunity requires a court to answer two questions: "(1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct."  *Peterson v. Kopp*, 754

F.3d 594, 598 (8th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009))

(internal quotation marks omitted).  A government official is entitled to qualified

immunity unless "both of these questions are answered affirmatively."  *Greenman v.*

*Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quotation marks omitted).  The Court has

discretion as to which prong "should be addressed first in light of the circumstances in

the particular case at hand."  *Pearson*, 555 U.S. at 236.  "A Rule 12(b)(6) dismissal based

on qualified immunity is appropriate when the immunity is established on the face of the

complaint."  *Dornheim v. Sholes*, 430 F.3d 919, 926 (8th Cir. 2005) (quotation marks

omitted).  "A court considers whether the plaintiff has stated a plausible claim for

violation of a constitutional or statutory right and whether the right was clearly

established at the time of the alleged infraction."  *Hager v. Ark. Dep't of Health*, 735 F.3d

1009, 1013 (8th Cir. 2013); *see Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)

(public officials "are entitled to qualified immunity unless [the plaintiff] has alleged the

violation of a constitutional right that was clearly established at the time of the alleged

violation").

### 1.    Violation of a Constitutional Right

The parties agree that the due process clause under the Fourteenth Amendment

applies to Hazley's claims.  Under the Fourteenth Amendment, no state shall "deprive

any person of life, liberty, or property, without due process of law."  U.S. Const. amend.

XIV, § 1.  The first step in determining if there has been a due process violation is

determining if there is a protected life, liberty, or property interest.  *See Movers*

*Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995).  "[W]here no

such interest exists, there can be no due process violation." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997). This is true whether the due process claim is a procedural or substantive one. *See Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (citing *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445-46 (8th Cir. 1995)).

The substantive due process component of the Fourteenth Amendment protects individuals against certain government actions, regardless of the procedures used to implement them. *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 816 (8th Cir. 2011). To show a violation of the substantive due process component of the Fourteenth Amendment, a plaintiff must demonstrate both that the official's conduct "violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Hall v. Ramsey Cty.*, 801 F.3d 912, 917 (8th Cir. 2015) (citations and quotation marks omitted).

### a.    Existence of a Protected Constitutional Right

Defendants concede that a person's liberty is a protected interest under due process clause of the Fourteenth Amendment. (Dkt. No. 51 at 5.) The Eighth Circuit case relied upon by Defendants, *Davis v. Hall*, "recognize[es] a protected liberty interest in being free from wrongful, prolonged incarceration." 375 F.3d 703, 712 (8th Cir. 2014); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *United States v. Salerno*, 481 U.S. 739, 755 (1987)

("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

While Defendants acknowledge the liberty interest in being free from incarceration after a court has ordered an offender's release, they cast the right asserted by Hazley as "a constitutional right to access an offender account, in the absence of a court order, that could hypothetically permit the offender to be released from the custody of a third party."[4]  (Dkt. No. 51 at 5.)  Defendants assert that Hazley's allegations, "at best, assert that he was wrongfully deprived access to money that could permit his release from the Hennepin County Jail."  (*Id.*)  On the contrary, as set forth below, the interest at issue is Hazley's liberty interest in being free from detention after his bail was set. Courts have concluded "that arrestees whose bail have been set have a protected liberty interest in posting bail and being freed from detention and, thus, depriving such arrestees of that liberty interest may violate due process."  *Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010), *cert. denied*, 131 S.Ct. 2150 (2011); *see also Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017) ("Other Circuits acknowledge that substantive due process protection of this liberty interest attaches once arrestees are deemed eligible for release on bail."); *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) ("The Fourteenth Amendment Due Process Clause includes the right to be free from continued detention

---

[4]    As pleaded by Hazley, there does not appear to be anything "hypothetical[]" about Hazley's release from the Hennepin County Detention Center had the first check he requested been properly processed or had MCF-Moose Lake cancelled the first check and sent the funds to the forwarding address as Hazley requested.  The Hennepin County District Court set cash bail at $800 and the exhibits indicate that Hazley had the $800 in his inmate account.  (Dkt. No. 25 at 4; Dkt. No. 25-3 at 2.)

after it was or should have been known that the detainee was entitled to release.") (internal quotation marks omitted). "Such a right emanates from the liberties 'at the heart' of the Due Process Clause: the freedom 'from government custody, detention, or other forms of physical restraint' prior to any determination of guilt." *Steele*, 855 F.3d at 502 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

In *Dodds*, an arrestee sued the sheriff in his individual capacity for violation of his Fourteenth Amendment rights in posting bail. 614 F.3d at 1189. The plaintiff was arrested pursuant to a valid warrant that preset bond at $5,000 and booked. *Id.* Two individuals asked the jail about posting bond on the plaintiff's behalf, but the jail told them the plaintiff could not post the preset bail until after he was arraigned by a judge. *Id.* The county had a policy of not permitting an arrestee to post bond after hours. *Id.* at 1190. In affirming the denial of summary judgment on qualified immunity grounds, the Tenth Circuit emphasized a plaintiff has a "liberty interest in being freed of detention once his bail is set" and that a state "may only interfere with this protected interest, if its interests reasonably relate to a legitimate goal." *Id.* at 1192. "Otherwise, the detention of such an arrestee would constitute punishment prior to trial, in violation of due process." *Id.* at 1192-93. In *Campbell*, jail administrators refused to accept court-approved real estate documents as security for the plaintiff-arrestee's bail for months after his bail was set. *See Campbell*, 586 F.3d at 838-39. The Eleventh Circuit found this evidence sufficient to overcome summary judgment on the plaintiff's due process claim. *Id.* at 840-42. The common thread between the officials' actions in *Dodds* and *Campbell*, is that the officials in those cases unreasonably inhibited, and essentially prevented, the

18

plaintiffs from exercising their bail options after bail was set.  *See also Hill v. Houston Cty. Judicial Circuit*, No. 517CV00481 TES/MSH, 2018 WL 2350068, at *3 (M.D. Ga. Apr. 16, 2018), *R.&R. adopted*, No. 517CV00481 TES/MSH, 2018 WL 2348661 (M.D. Ga. May 23, 2018) (finding that a Fourteenth Amendment due process claim survived a motion to dismiss where the complaint inferred that the defendants' actions hindered the plaintiff's ability to be released by unilaterally deciding that the $10,000 bond, as set by the magistrate judge, could only be satisfied by a cash payment).[5]

Here, Hazley alleges that on May 2, 2016, the Hennepin County district court issued an interim conditional release order, setting bail in the amount of $8,000 or a cash alternative of $800.  (Dkt. No. 49 ¶ 18; Dkt. No. 25 at 4.)  Hazley informed "Inmate Accounts" that he wanted to have his Hennepin County bail paid from his account, asked what procedure he needed to follow, and was told on May 13, 2016, after he submitted the necessary paperwork, that a check had been sent ("Done today").  (Dkt. No. 25-3 at 1, 3; Dkt. No. 49 ¶¶ 19-22.)  MCF-Moose Lake account records show a May 13, 2016 transaction in the amount of $800 from Hazley's account to Hennepin County Criminal Court.  (Dkt. No. 25-3 at 2 (Ex. 16).)  After it became apparent that the transaction had gone awry (the reason why is unclear, but it does not appear to have been Hazley's fault), Hazley alleges that he, his attorney, and his sister repeatedly tried to have MCF-Moose Lake stop payment on that check and have the funds sent to a third party so Hazley could

---

[5]     While it appears Hazley's place of detention changed sometime in between May 2016 and June 2016 from MCF-Moose Lake to Hennepin County, that fact does not alter the Court's finding (as set forth more fully below) that Hazley has adequately alleged the MCF-Moose Lake Defendants unreasonably impeded his ability to exercise his established right to post bail from that detention for approximately two months.

19

post bail.  (Dkt. No. 49 ¶¶ 25-33, 50-70, 81-116.)  Nevertheless, MCF-Moose Lake did

not return his bail money until July 18, 2016 (the date of Hazley's trial on the burglary

charge), and Hazley remained detained pending trial for over two months.  (*Id.* ¶ 33.)

Hazley now alleges that Warden Dooley's and Cisar's actions in requiring his personal

authorization to stop payment on the first check, pursuant to MCF-Moose Lake's customs

and policies, and in failing to respond to Hazley and his attorney's requests "denied

[Hazley] an opportunity to bail out from jail" and "an opportunity to post bail from jail."

(*Id.* ¶¶ 49-50, 98, 100; *see also id.* ¶¶ 51-70, 94-96, 102-15.)  Based on these allegations,

the Court finds that Hazley has adequately alleged a liberty interest in being free from

detention once bail was set that he did not ultimately receive.

> **b.    Whether Hazley Adequately Alleged that Defendants Warden Dooley and Cisar's Conduct Constituted Deliberate Indifference to Hazley's Right to Bail**

The Court must next inquire as to whether the officials violated Hazley's right to

bail and whether their conduct is "so egregious, so outrageous, that it may fairly be said

to shock the contemporary conscience."  *Hall*, 801 F.3d at 917-18 (quoting *Cty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 847-48 n.8 (1998)).  Conduct that is "'intended to

injure [an individual] in some way unjustifiable by any governmental interest is . . . most

likely to rise to the conscience-shocking level.'"  *Id.* at 918 (alteration and omission in

original) (quoting *Lewis*, 523 U.S. at 849).  "But when the acts of a government official"

constitute "'something more than negligence but less than intentional conduct' the

'totality of the facts in a given case' must be assessed to determine whether behavior is

conscience shocking."  *Id.* (footnote omitted) (quoting *Lewis*, 523 U.S. at 849, 850).

Specifically, courts have utilized two standards for measuring such behavior: (1) the intent-to-harm standard and (2) the deliberate indifference standard. *See Terrell v. Larson,* 396 F.3d 975, 978 (8th Cir. 2005). As stated by the Eighth Circuit in *Terrell*:

> Because a wide variety of official conduct may cause injury, a court must first determine the level of culpability the § 1983 plaintiff must prove to establish that the defendant's conduct may be conscience shocking. Mere negligence is never sufficient. Proof of intent to harm is usually required, ***but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold. Lewis, 523 U.S. at 848-49. The deliberate indifference standard "is sensibly employed only when actual deliberation is practical*.**" *Id.* at 851; *see Wilson v. Lawrence County*, 260 F.3d 946, 957 (8th Cir. 2001). By contrast, the intent-to-harm standard most clearly applies "in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation." *Neal v. St. Louis Cnty. Bd. of Police Comm'rs*, 217 F.3d 955, 958 (8th Cir. 2000).

*Id.* (emphasis added). "Deliberate indifference requires both that the official 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and that the official actually drew that inference." *Montgomery v. City of Ames*, 749 F.3d 689, 695 (8th Cir. 2014) (quoting *Hart v. City of Little Rock*, 432 F.3d 801, 805–06 (8th Cir. 2005)).

Defendants argued that not only has Hazley failed to properly allege that they were "deliberately indifferent" to his plight, but that the alleges conduct related to unnamed "customs and policies" fails to set forth any personal involvement on their part or that they were directly responsible for his prolonged incarceration. (Dkt. No. 51 at 6.) Even if Warden Dooley and Cisar knowingly and deliberately withheld the $800 in Hazley's offender account, Defendants maintain that being indirectly responsible for Hazley's prolonged incarceration does not subject them to liability. (*Id.*)

21

"Government officials are personally liable only for their own misconduct."  *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).  The doctrine of vicarious liability is inapplicable in § 1983 suits.  *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007); *see also Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (noting that plaintiff pursuing claims under § 1983 must "allege facts supporting any individual defendant's personal involvement or responsibility for the violations") (citations omitted); *Jackson v. Nixon,* 747 F.3d 537, 545 (8th Cir. 2014) (finding that a plaintiff "must plead facts that plausibly show direct involvement... in the formation, implementation, ***or enforcement*** of that policy.") (emphasis added).  Where defendants as government officials had no "direct participation" in the alleged acts, they are entitled to qualified immunity.  *See Mendoza v. United States Immigration & Customs Enf't*, 849 F.3d 408, 418 (8th Cir. 2017).

### *i.    Warden Dooley*

Assuming the facts in the Third Amended Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Hazley (*see Ashley County, Ark.*, 552 F.3d at 665), this Court finds that Hazley adequately alleges that Warden Dooley directly participated in depriving Hazley of the opportunity for release on bail pending his trial and that Warden Dooley's conduct amounted to deliberate

22

indifference to Hazley's rights. Hazley contends that Warden Dooley unlawfully restrained his freedom of movement or personal liberty from May 13, 2016 to July 18, 2016 as the result of Warden Dooley not sending the $800 bail to Hennepin County Criminal Court and by not granting his request to stop payment on the check and sending the funds to him at his forwarding address. (Dkt. No. 49 ¶¶ 73-74.) According to Hazley, Warden Dooley "knew or should have known about" his situation. (*Id.* ¶ 72.)

In addition, Hazley alleges that Warden Dooley denied him the ability to post bail due to "MCF-Moose Lake's customs and policies," which required Hazley to personally authorize the cancellation of his check and precluded his attorney from canceling the check and having the funds sent to his requested forwarding address. (*Id.* ¶¶ 50-51, 57-63.) Hazley alleged: "Defendant Dooley denied Plaintiff Hazley's Public Defender, Mark Bearss, request to stop payment on his check due to MCF-Moose Lake's customs and policies." (Dkt. No. 59 ¶ 56.) Under Minnesota law, Warden Dooley is in charge of all inmate funds. *See* Minn. Stat. § 241.08, subd. 1 ("The chief executive officer of each institution under the jurisdiction of the commissioner of corrections shall have the care and custody of all money belonging to inmates thereof which may come into the chief executive officer's hands, keep accurate accounts thereof and pay them out under rules prescribed by law . . . or by the commissioner of corrections, taking vouchers therefor."). Hazley alleges that the required personal authorization was impossible because he was detained a different facility. (*Id.* ¶ 58.) According to Hazley, MCF-Moose Lake repeatedly ignored his or his attorney's requests that his bail check be cancelled and his request for the return of his bail funds. (*Id.* ¶¶ 67-70.) Again, Hazley alleged that Warden

Dooley is responsible for all inmate funds and "knew or should have known about" his

situation.  (*Id.* ¶ 72.)  As Magistrate Judge Leung has previously held in this matter:

> Although a closer call, the Court concludes that Plaintiff has alleged more
> than Warden Dooley's general supervisory authority over MCF—Moose
> Lake.  Again accepting all of Plaintiff's allegations as true and making all
> reasonable inferences in his favor, Warden Dooley's statutory duties with
> respect to inmate funds combined with Plaintiff's allegations that he and
> individuals on his behalf repeatedly contacted MCF-Moose Lake regarding
> his bail funds allege sufficient personal involvement of Warden Dooley in
> the events in question and alleged constitutional violation.  *See Jackson*, 747
> F.3d at 545 ("Given Crawford's statutory duties, including those associated
> with administration of the [program at issue], Jackson's complaint alleged
> sufficient personal involvement as to MDOC Director Crawford."); *see also
> Steadman*, 2015 WL 1954402, at *11.  Accordingly, the Court recommends
> that Defendants' motion to dismiss be denied and Plaintiff's motion to amend
> be granted with respect to Plaintiff's claim against Warden Dooley in her
> individual capacity.

*Hazley v. Roy*, No. 16-CV-3935 (SRN/TNL), 2017 WL 9672390, at *9 (D. Minn. Nov. 3,

2017), *R.&R. adopted*, No. 16-CV-3935 (SRN/TNL), 2018 WL 1399309 (D. Minn. Mar.

20, 2018); *see also Messimer v. Lockhart*, 702 F.2d 729, 732 (8th Cir. 1983) (quoting

*Tatum v. Houser*, 642 F.2d 253, 254 (8th Cir. 1981)) ("We have held that a sheriff who

had a statutory duty to supervise a jail was "'liable for jail conditions even though he may

not have had actual knowledge of them.'").  In light of the previous holding in this case,

the statutory responsibility of Warden Dooley concerning the funds that Hazley sought to

use for bail, and the allegations in the Third Amended Complaint, the Court finds that

Hazley has adequately alleged sufficient personal involvement of Warden Dooley as it

relates to the alleged constitutional violation of impeding Hazley's ability to post bail

with no legitimate reason.

The Court also concludes that the Third Amended Complaint adequately alleges deliberate indifference on the part of Warden Dooley.  In *Hayes v. Faulkner Cnty., Ark.*, 388 F.3d 669 (8th Cir. 2004), the Eighth Circuit determined that the defendant, a jail administrator, "helped promulgate and enforce the deliberately indifferent policy" that resulted in the plaintiff's extended detention by relying upon the court to schedule the detainee's first appearance.  388 F.3d at 674.  The arrestee in *Hayes* was held for 38 days before he was granted his first appearance.  *Id.*  Throughout that 38-day period, the defendant "made a conscious decision to do nothing."  *Id.*  According to the Eighth Circuit, "[t]hat conscious disregard is deliberate indifference violating the standards of due process."  *Id.; see also Armstrong v. Squadrito*, 152 F.3d 564, 582 (7th Cir. 1998) (finding that conduct shocked the conscience where the plaintiff was arrested and due to the sheriff's office misfiling papers, the plaintiff was detained for 57 days without an initial appearance, despite his repeated protests).  While these cases applied to a pretrial detainee's right to a prompt appearance in court after an arrest by warrant, they nonetheless provide guidance as to whether Hazley has sufficiently alleged deliberate indifference on the part of Warden Dooley to Hazley's inability to exercise his right to be freed from detention on bail pending trial due to MCF-Moose Lake's policies.

Here, Hazley alleges he lost his chance for release from May 13, 2016 through at least the date of his trial on July 18, 2016 (over two months later) because Warden Dooley impeded his ability to get an $800 check to Hennepin County pursuant to the state district court's May 2, 2016 Order for bail.  Warden Dooley, whom Hazley has alleged knew about his bail, also failed to allow Hazley to cancel the first transaction and

send the money to the address Hazley requested by enforcing an indifferent policy requiring inmates to personally authorize the cancellation and transfer of his funds, despite the fact Hazley was unable to do so given his location of incarceration.[6]  While not dispositive to the analysis, the Court is also troubled by the fact that Hazley allegedly received his money back from MCF-Moose Lake on the day of his trial (apparently in the absence of the previously required personal authorization that prevented him from posting bail earlier)—when it was essentially too late for Hazley to make use of the funds for bail.  (Dkt. No. 49 ¶ 33.)  In sum, while Hazley sat in the Hennepin County detention for approximately 60 days, Warden Dooley consciously disregarded the violation of Hazley's constitutional rights by doing nothing until the eleventh hour, and that alleged conscious disregard is deliberate indifference violating the standards of due process.  *See Hayes*, 388 F.3d at 674.

### ii.    *Cisar*

Considering all of the factual allegations together as a whole in the Third Amended Complaint and the documents referenced therein, the Court similarly concludes that Hazley has alleged sufficient facts showing the personal involvement of Cisar in the alleged constitutional violation and that her alleged conduct amounted to deliberate disregard of Hazley's liberty interests.  Hazley alleges that Cisar worked on or handled

---

[6]    Hazley appears to have been in a Catch-22 with respect to the cancellation of check he initially requested, because he was unable to personally authorize the cancellation at MCF-Moose Lake due to his incarceration at the Hennepin County Detention Center and was unable to obtain post bail and end his incarceration at the Hennepin County Detention Center without cancelling the first check.  As pleaded, both Warden Dooley and Cisar were aware of these facts.

his matter at MCF-Moose Lake related to his bail money and knew about his bail situation. (Dkt. No. 49 ¶¶ 81-83.) Hazley also alleges that Cisar represented to him that she had sent the bail money when in fact she failed to send the funds and failed to follow up with him on the hold on his bail check. (*Id.* ¶¶ 87-94.) As it relates to stopping payment on the check, Hazley alleges that Cisar denied him the opportunity to stop payment on his check, required him to provide personal authorization to forward funds, and precluded his legal counsel from authorizing the stop of payment on June 21, 2016 and returning the funds to his forwarding address so that he could pay his bail. (*Id.* ¶¶ 101-12.) Moreover, the Third Amended Complaint alleges that Cisar was in direct contact with Hazley, his legal counsel, and his sister as it relates to his attempts to retrieve his bail money. (*Id.* ¶¶ 84-86.) Despite these communications to Cisar and her knowledge of his situation, Hazley was never able to post bail and only received his money back when his criminal trial started. Given Cisar's alleged knowledge of the Hazley's bail situation, her representation that the funds were sent, her failure to send the money to Hennepin County, and her execution of policies that impeded his known right to bail through the date of trial, the Court finds that the Third Amended Complaint adequately alleges Cisar's deliberate indifference to Hazley's right to personal liberty.

## 2. Clearly Established Right

Defendants Dooley and Cisar argue they are still entitled to qualified immunity even if Hazley alleges a plausible Fourteenth Amendment violation because his constitutional right is not clearly established. (Dkt. No. 51 at 7.) For purposes of the qualified immunity analysis, a "right is clearly established if its contours were

27

sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that [she] was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *City & Cnty. of S.F., Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quotations, citations, and alterations omitted). The key inquiry into the law of the controlling jurisdiction or the consensus of cases of persuasive authority is "whether it would have been clear to a reasonable officer in the [defendant's] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 572 U.S. 744, 758 (2014) (citation omitted); *Jacobson v. McCormick*, 763 F.3d 914, 918 (8th Cir. 2014) (citing *Wilson v. Layne*, 526 U.S. 603, 617(1999)).  In other words, "[t]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotations and alterations omitted).

Citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017), Defendants argue the Supreme Court held that a right "is clearly established when existing precedent has placed the statutory or constitutional question beyond debate."  (Dkt. No. 51 at 7.)  The U.S. Supreme Court also instructed in *White* that the law surrounding qualified immunity "do[es] not require a case directly on point for a right to be clearly established."  137 S. Ct. at 551 (quotation marks omitted).  Thus, "[t]here is no requirement that the very action in question has previously been held unlawful, but rather, in the light of pre-existing law the unlawfulness must be apparent."  *Vaughn v. Ruoff*, 253 F.3d 1124, 1129 (8th Cir. 2001) (internal quotation marks and citations omitted).  This exacting standard "gives government officials breathing room to make reasonable but mistaken judgments

28

about open legal questions" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted).

At this stage of the litigation, neither Warden Dooley nor Cisar are entitled to qualified immunity. The contours of the right Hazley alleges Defendants violated—his liberty interest in being free from detention once his bail was set—were sufficiently clear given the consensus of persuasive authority that a reasonable official in Defendants' position would know their actions and enforcement of policies that prevent pre-trial detainees with judicially preset bail from posting bail for no specified legitimate reason violates the Fourteenth Amendment right to due process. *See Dodds*, 614 F.3d at 1193 ("arrestees whose bail have been set have a protected liberty interest in posting bail and being freed from detention and, thus, depriving such arrestees of that liberty interest may violate due process"); *Steele*, 855 F.3d at 502 ("Other Circuits acknowledge that substantive due process protection of this liberty interest attaches once arrestees are deemed eligible for release on bail."); *Campbell*, 586 F.3d at 840 ("The Fourteenth Amendment Due Process Clause includes the right to be free from continued detention after it was or should have been known that the detainee was entitled to release.") (internal quotation marks omitted); *Gaylor v. Does*, 105 F.3d 572, 574-78 (10th Cir. 1997) (reversing grant of summary judgment for defendants on plaintiff-arrestee's due process claim, where bail was set but was never communicated to the plaintiff (unless they asked) or other individuals inquiring about it); *cf.*, *Stack v. Boyle*, 342 U.S. 1, 4 (1951) ("[F]ederal law has unequivocally provided that a person arrested for a non-capital

offense shall be admitted to bail.  This traditional right to freedom before conviction permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to conviction.  Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.") (internal citation omitted).[7]

## IV.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Dkt. No. 50) be **GRANTED** in part as it relates to the claims and allegations against Tom Roy and **DENIED** in part as it relates to the claims against Defendants Becky Dooley and Kristi Cisar;

2. Glenn Kevin Hazley's Motion to Proceed in Response to Defendant's [sic], Roy's, Cisar's, and Dooley's Motion to Dismiss (Dkt. No. 58) be **DENIED AS MOOT**; and

3. Plaintiff's Motion to Response [sic] to Defendants' Letter Dated Sept. 21, 2018 (Dkt. No. 70) be **DENIED** as Plaintiff's sur-reply is neither authorized by the Local Rules of this District or the Court's Order and is

---

[7]    Given that the Court has recommended denying the motion to dismiss as to Warden Dooley and Cisar, it does not need to address whether the Court has continuing supplemental jurisdiction over Hazley's state common law false imprisonment claims (Dkt. No. 49 ¶¶ 155-73).

unnecessary in light of Plaintiff's opposition and the arguments asserted in

the Defendants' reply letter.


DATED: November 26, 2018                    *s/ Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge




## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).