## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Glenn Kevin Hazley,                                         File No. 16-cv-3935 (ECT/ECW)

        Plaintiff,

v.

                                    **OPINION AND ORDER**

Becky Dooley and Kristi Cisar,

        Defendants.

---

Leland P. Abide, Kutak Rock LLP, Minneapolis, MN, and Karl L. Cambronne, Chestnut Cambronne PA, Minneapolis, MN, for Plaintiff Glenn Kevin Hazley.

Steven Forrest, Minnesota Attorney General's Office, St. Paul, MN, for Defendants Becky Dooley and Kristi Cisar.

---

If everything had gone according to plan, Plaintiff Glenn Kevin Hazley would have been a free man from about mid-May 2016 through at least July 20, 2016.  Hazley was incarcerated at the Minnesota Correctional Facility in Moose Lake ("MCF-Moose Lake") when the Minnesota Court of Appeals determined in March 2016 that his sentence was unauthorized and remanded his criminal case to the district court for further proceedings. After remand, the Hennepin County district court set bail for Hazley, and he attempted to access funds in his inmate account to post bail and obtain release pending further district-court proceedings.  Hazley filed this civil case alleging that three MCF-Moose Lake officials violated 42 U.S.C. § 1983 by depriving him of his Fourteenth Amendment liberty interest in "being able to post bail and be free on bail" after bail was set in the state district court. *Hazley v. Roy*, 378 F. Supp 3d 751, 757 (D. Minn. 2019); *see also* Mem. in Opp'n

at 1 [ECF No. 125].[1]   Based on these same facts, Hazley also alleges that Defendants committed the state-law tort of false imprisonment.   Hazley's claims against one of these three officials, Tom Roy, were dismissed.   *Hazley*, 378 F. Supp. 3d at 760.   The two remaining officials, Defendants Kristi Cisar and Becky Dooley, seek summary judgment. ECF No. 113.   Their motion will be granted because no reasonable juror could find on the record evidence that Cisar or Dooley's actions were deliberately indifferent, the threshold showing the law requires Hazley to make with respect to his substantive due process claims and, for practical purposes, his false imprisonment claim, also.

## I

Many of the relevant facts are undisputed.   On March 14, 2016, the Minnesota Court of Appeals reversed the sentence imposed for Hazley's conviction of third-degree burglary. *State v. Hazley*, No. A15-1418, 2016 WL 953051 (Minn. Ct. App. Mar. 14, 2016).   The Court of Appeals remanded the case to the district court "to determine the appropriate lawful sentence."   *Id.* at *2.   On remand, the district court permitted Hazley to withdraw his guilty plea and set bail at $8,000 with conditions with an $800 cash alternative.   Forrest Decl., Ex. 5 at 4, 8–9 [ECF No. 119-1 at 33, 37–38].   After bail was set, Hazley was returned to MCF-Moose Lake, and on May 10, 2016, he sent an "Offender Kite Form"—a

---

[1]       Hazley filed this case pro se.   Following a referral to the FBA *Pro Se* Project, Leland P. Abide, of Kutack Rock LLP, and Karl L. Cambronne, of Chestnut Cambronne PA, appeared on Hazley's behalf.   *See* ECF Nos. 106, 112.   Mr. Abide and Mr. Cambronne's representation of Hazley and service through the *Pro Se* Project merits acknowledgment and is much appreciated.

handwritten communication on a pre-printed form—to MCF-Moose Lake's Inmate

Accounts.  Cisar Decl., ¶ 7, Ex. 3 [ECF No. 116-1 at 49].  In that form, Hazley wrote:

> I would like to know how I can pay my bail (800.00) to
> Hennipen [sic] Cty. Courts.  My case was overturned and the
> courts set my bail at 800.00$ [sic].  I'm waiting on the
> paperwork to be processed so I can be released but want to have
> my bail paid, because its [sic] my understanding that I will be
> given a debit card upon my release from here and I don't have
> anyone to take money off my card.  Thats [sic] why I need to
> handle this matter right now.  Please contact my caseworker if
> you have any questions about my status here at Moose Lake.
> Thank you very much for your help with this matter, it is
> greatly appreciated.

*Id.*  The following day, Cisar, an accounting officer at MCF-Moose Lake's Inmate

Accounts division, *id.* ¶¶ 1–2, responded, instructing Hazley to "[s]ubmit a voucher

payable to the county for what you want sent/paid.  Attach an addressed envelope.  I will

process the check, put it in the envelope and get it mailed out.  Or, you can pay them with

your debit card once you are released," *id.* ¶ 7, Ex. 3.  The day after he received Cisar's

response, May 12, Hazley sent a second Offender Kite Form to Cisar along with an

offender voucher form and an addressed envelope, consistent with Cisar's instructions.  *Id.*

¶¶ 11–12, Ex. 4 [ECF No. 116-1 at 50].  Hazley asked to be provided with "confirmation

that funds were sent out."  *Id.*

The Parties dispute whether Cisar actually followed through on Hazley's request

and mailed the check to Hennepin County.  In a declaration supporting her summary-

judgment motion, Cisar testified that her "review of DOC records . . . suggest[s] that [she]

timely and appropriately processed [Hazley's] request" and mailed an $800 check to

Hennepin County Courts on May 13.  *Id.* ¶ 12.  Responding to Hazley's request for

confirmation, Cisar wrote a short note to Hazley on May 13 that read simply: "Done today." *Id.*, Ex. 4.  According to Hazley, Cisar did not process his request in the normal course and did not mail the check.  *See* Mem. in Opp'n at 8–14.  Hazley bases this assertion on evidence showing that Hennepin County "had no record of ever receiving the check," *see* Abide Decl., Ex. A at 2 [ECF No. 126-1], that Hazley's criminal defense counsel was not able to locate the check despite "significant investigation," Forrest Decl., Ex. 9 at 3–4 [ECF No. 119-1 at 47–48], and that "Defendants were unable to produce a copy of the May 13 check," *see* Abide Decl., Ex. B at 2 [ECF No. 126-2].  May 13, 2016, the day Hazley's $800 bail check was to have been mailed, was a Friday.  It seems the earliest Hennepin County could have received the check—and Hazley could have bailed out—would have been the following Monday, May 16.

After learning that Hennepin County evidently had not received his bail check, and after the district court denied his motion to reduce his bail, *id.*, Ex. 9 at 8 [ECF No. 119-1 at 52], Hazley's attorney and sister requested that MCF-Moose Lake stop payment on the bail check.  *See* Cisar Decl., Ex. 7 [ECF No. 116-2 at 1].  The requests made by Hazley's attorney and sister were not honored because, pursuant to policy, MCF-Moose Lake required Hazley personally—and not a third party acting on his behalf—to request that payment be stopped on a check issued on an inmate's account.  Hazley Decl. ¶ 10 [ECF No. 127].  Hazley personally requested that payment be stopped and that remaining funds in his inmate account be returned to him, via mailing to his sister's address, in a letter dated June 21, 2016.  Cisar Decl., Ex. 7.  Cisar is uncertain when she received Hazley's June 21 request, but she processed the request on June 28, 2016.  *Id.* ¶ 17, Exs. 7–10 [ECF No. 116-

2 at 1–5].  Hazley was tried and convicted of third-degree burglary following a bench trial that began July 20, 2016.  *See* Forrest Decl., Ex. 10 [ECF No. 119-1 at 54–68].[2]

## II

The familiar summary judgment standards govern consideration of the Defendants' motion.  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"   42 U.S.C. § 1983.   The Due Process Clause of the Fourteenth

---

[2]      Though Hazley was in custody from the time the Minnesota Court of Appeals reversed his sentence through his re-trial and re-sentencing, Hazley seems to agree that Cisar's transmission of the funds to his sister in compliance with his request ends the period for which Defendants could be liable for damages.  *See* Mem. in Opp'n at 17 (explaining that "the time frame for which Ms. Cisar is directly responsible for Mr. Hazley's wrongful incarceration is approximately May 16, 2016 through June 30, 2016," taking into account the "2–3 business days" it would likely have taken for the June 28 check from Cisar to reach Hazley's sister).

Amendment provides that "[n]o State . . . shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "This provision contains a 'substantive component' that 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'"  *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 816 (8th Cir. 2011) (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992)).  "To establish a violation, a plaintiff 'must demonstrate *both* that the official's conduct was conscience-shocking, *and* that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'"  *Id.* (quoting *Norris v. Engles,* 494 F.3d 634, 638 (8th Cir.2007)).  "Because a wide variety of official conduct may cause injury, a court must first determine the level of culpability the § 1983 plaintiff must prove to establish that the defendant's conduct may be conscience shocking."  *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (en banc).  "Mere negligence is never sufficient.  Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold."  *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998)).  "When 'actual deliberation is practical,' establishing a substantive-due-process violation requires proof of deliberate indifference, rather than conscience-shocking conduct."  *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013) (quoting *Terrell*, 396 F.3d at 978).[3]

---

[3]     This statement from *Baldwin* suggests that "deliberate indifference" is a different standard from "conscience-shocking conduct."  It doesn't really matter, but that seems at

Two conclusions of law seem uncontroversial here.  First, Hazley "had a constitutionally protected liberty interest in exercising his bail option, once bail had been set, sufficient to trigger substantive due process protection."  *Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017).  "Such a right emanates from the liberties 'at the heart' of the Due Process Clause: the freedom 'from government custody, detention, or other forms of physical restraint' prior to any determination of guilt."  *Id.* (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).  In addition to the Third Circuit in *Steele*, two other circuits have recognized this right.  *See Dodds v. Richardson*, 614 F.3d 1185, 1192–93 (10th Cir. 2010); *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009).  Defendants here do not question these cases or cite contrary authorities, and  it seems safe to conclude that the Eighth Circuit probably would reach the same conclusion and characterize this right as one that is "fundamental," "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Schmidt*, 655 F.3d at 816.

Second, there seems little doubt that actual deliberation was practical.  *Lewis* says as much when it observes that, "in the custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a

---

least imprecise—and perhaps incorrect—in view of *Lewis*.  In *Lewis*, as the en banc Eighth Circuit recognized in *Terrell*, the Supreme Court described the deliberate-indifference standard as a degree of culpability necessary to establish that conduct *is* conscience shocking, not as a degree of culpability *distinct from* conscience-shocking behavior.  *Lewis*, 523 U.S. at 846–851; *Terrell*, 396 F.3d at 978.  In other words, the question isn't whether to apply a deliberate-indifference *or* conscience-shocking test.  The issue is whether the deliberate-indifference standard is "the level of culpability the § 1983 plaintiff must prove" to establish that a defendant's behavior shocks the conscience.  *Terrell*, 396 F.3d at 978.

prisoner to exercise ordinary responsibility for his own welfare." *Lewis*, 523 U.S. at 851. Therefore, the deliberate-indifference standard is as the degree of culpability Hazley must establish to show that Cisar and Dooley's conduct is conscience shocking. *Terrell*, 396 F.3d at 978. Here, the Parties agree and analyze the issue under the deliberate indifference standard. Mem. in Supp. at 10–11 [ECF No. 115]; *see generally* Mem. in Opp'n [ECF No. 125]. "The deliberate indifference standard applied in a substantive due process case is the same as that applied in Eighth Amendment cases," *Estate of Johnson v. Weber*, 785 F.3d 267, 272 (8th Cir. 2015), and "includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (quotation and internal quotation marks omitted). To prove deliberate indifference, a plaintiff must make a two-part showing: "The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'" *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Judged against the deliberate-indifference standard, Hazley's § 1983 claim against Cisar cannot survive summary judgment. Hazley is correct that there is a genuine fact dispute about whether Cisar mailed the $800 bail check on May 13. To recap, Hennepin County "had no record of ever receiving the check." Abide Decl., Ex. A at 2 [ECF No. 126-1]. Hazley's criminal defense counsel was not able to locate the check despite "significant investigation." Forrest Decl., Ex. 9 at 3–4 [ECF No. 119-1 at 47–48]. And

"Defendants were unable to produce a copy of the May 13 check," Abide Decl., Ex. B at 2 [ECF No. 126-2].  But the law makes clear that whether Cisar mailed the check on May 13 isn't really the issue.  The issue is whether Cisar acted with deliberate indifference in failing to mail the check.  On this question, Cisar's testimony is all we have.  Recall that she has testified that her "review of DOC records . . . suggest[s] that I timely and appropriately processed [Hazley's] request" and mailed an $800 check to Hennepin County Courts on May 13.  *Id.* ¶ 12.  The short note she wrote on May 13 responding to Hazley's request for confirmation—that read simply "Done today"—is contemporaneous evidence of Cisar's good faith.  *Id.*, Ex. 4 [ECF No. 116-1 at 50].  Of course, that does not mean that Cisar has proven beyond doubt that she acted in good faith, but Hazley has identified no evidence from which a reasonable juror could infer deliberate disregard on her part in connection with the bail check's processing or mailing.[4]  Hazley also argues that Cisar's May 11 response—in which she told Hazley to submit a voucher and she would send a check to Hennepin County Courts—was deliberately indifferent because Cisar had no knowledge regarding the proper procedure for posting bail, and was not trained or authorized to give advice on how to do so.  In a different case, this argument might be sufficient.  It isn't here because there is no record evidence that Cisar's May 11 response was incorrect in any material respect.  As Hazley acknowledges, there is no evidence "that Hennepin County

---

[4]     No authorities have been cited to support the proposition that a party's lack of receipt of a mailing raises a genuine issue of material fact as to the sender's negligence.  If that were so, it bears repeating that the Eighth Circuit has "repeatedly held" that inadvertence, negligence, and gross negligence "do[] not rise to the level of deliberate indifference."  *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (citations omitted).

Courts would have refused to process a check from MCF-Moose Lake as a method to post

Mr. Hazley's bail." Mem. in Opp'n at 15 n.6. He admits that the evidence actually shows

the opposite, and that a check likely "would have been sufficient." *Id.*

Defendants' motion will also be granted as it relates to Hazley's claim against

Dooley. "A prison official, such as Warden [Dooley], 'may not be held liable under § 1983

for the constitutional violations of a subordinate on a respondeat superior theory.'" *Lenz*

*v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Ambrose v. Young*, 474 F.3d 1070,

1079 (8th Cir. 2007)). The mere supervisory or oversight role of a warden is insufficient

to establish liability under § 1983. *See Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976), *Glick*

*v. Sargent*, 696 F.2d 413, 414–15 (8th Cir. 1983), *Cotton v. Hutto*, 577 F.2d 453, 455 (8th

Cir. 1978). Rather, it is the direct actions of the individual herself that gives rise to § 1983

liability. *Id.* The Parties agree that "the facts in the record fail to demonstrate that

Defendant Dooley had personal involvement in the handling of Plaintiff's request for a

check to pay his bail amount." Mem. in Opp'n at 18–19; Mem. in Supp. at 17–18.

Therefore, as a matter of law, Dooley cannot be liable under § 1983 insofar as Hazley's

claim against her relates to the handling of his bail check. In opposing summary judgment

for Dooley, Hazley argues that "although she was not the root cause of the constitutional

violation, Warden Dooley's promulgation of the policy" requiring inmates to personally

submit a form to stop payment of a previously-issued check "was deliberately indifferent

to Mr. Hazley's constitutional rights [and] prolonged Mr. Hazley's wrongful

incarceration." *See* Mem. in Opp'n at 19. This argument does not raise a triable issue of

material fact regarding Dooley's deliberate indifference. Hazley identifies no general

10

problem with a policy requiring account holders' personal request or verification to stop payment on checks.  Though Hazley argues that Dooley's failure to make an exception for his "extremely rare and unusual" circumstances amounted to deliberate indifference, he identifies no record evidence permitting the inference that Dooley was aware of his circumstances.

If summary judgment is granted with respect to Hazley's federal claims, Defendants argue that supplemental jurisdiction should not be exercised over Hazley's state-law false-imprisonment claim.  *See* Mem. in Supp. at 24.  The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides that "district courts *may* decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3) (emphasis added).  In deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]"  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  These factors weigh in favor of exercising supplemental jurisdiction here.  Hazley filed his complaint nearly four years ago, in November 2016.  ECF No. 1.  Discovery has been completed, *see* Amended Pretrial Scheduling Order at 3 [ECF No. 111], and the Parties have briefed the false-imprisonment claim, Mem. in Supp. at 24–25; Mem. in Opp'n at 30.  Put bluntly, "[n]othing is gained" by declining to adjudicate the false-imprisonment claim.  *Koul v. Strong Mem'l Hosp.*, 282 F. Supp. 3d 569, 570 (W.D.N.Y. 2017).  A decision not to exercise supplemental jurisdiction would result in significant duplication of efforts, on the part of both the attorneys and the state court.  *Id.*  Though the false-imprisonment claim is

a state-law claim, "it does not appear to be a novel or unsettled state law issue." *Id.* at 570–71. Moreover, the determination above that Cisar did not act with deliberate indifference defeats Hazley's argument in support of his false-imprisonment claim. Accordingly, the values of judicial economy, convenience, fairness, and comity weigh in favor of the exercise of supplemental jurisdiction in this case. *Carnegie-Mellon Univ.*, 484 U.S. at 350.

False imprisonment in Minnesota is an intentional tort. *Wild v. Rarig*, 234 N.W.2d 775, 792 (Minn. 1975). "[T]he elements of false imprisonment are (1) words or acts intended to confine, (2) actual confinement, and (3) awareness by the plaintiff that he is confined." *Blaz v. Molin Concrete Prods. Co.*, 244 N.W.2d 277, 279 (Minn. 1976) (citations omitted). The dispute at this stage concerns only the first element, and Hazley does not oppose summary judgment insofar as the claim is asserted against Dooley. Mem. in Opp'n at 30. Instead, Hazley argues that "Defendant Cisar's failure to mail the May 13 check (if believed by a jury) was so reckless that it constituted an act sufficient to demonstrate an 'intent to confine' Mr. Hazley, in satisfaction of the first prong." *Id.* This argument is defeated by the determination that Cisar did not act with deliberate indifference to, or in reckless disregard of, Hazley's rights. If she was not reckless, her actions could not have been "so reckless that [they] constituted an act sufficient to demonstrate an 'intent to confine[.]'" *Id.* The Minnesota Court of Appeals recently rejected a similar argument in *Heilman v. Courtney*, No. A17-0863, 2019 WL 4008097, at *3 (Minn. Ct. App. Aug. 26, 2019). There, the plaintiff filed a complaint against the program manager of the Minnesota Department of Corrections alleging false imprisonment based on the program manager's alleged failure to investigate and correct the plaintiff's release date. *Id.* at *1.

The plaintiff argued, based on *Vance v. Rumsfeld*, 701 F.3d 193, 204 (7th Cir. 2012), that the program manager's failure to investigate and correct his release date was so deliberately indifferent to his rights that it amounted to an intent to confine him. *Id.* at 3. In analyzing *Vance*, the Court of Appeals determined that deliberate indifference on its own was not enough to show an intent to confine, but that "for such deliberate indifference to be sufficient, the tortfeasor would have to know of a substantial risk to the plaintiff and ignore that risk *because he wanted the plaintiff to be harmed*." *Id.* at *3 (emphasis added). Like the plaintiff in *Heilman*, Hazley "makes no allegation," and there is no evidence to support an argument "that [Cisar] wanted [Hazley] to be harmed or overly incarcerated." *Id.* As explained, there is simply no evidence that Cisar had any intent not to mail the $800 check to Hennepin County Courts, let alone an intent to harm Hazley by not mailing the check. "Therefore, even accepting [Hazley's] theory of deliberate indifference, . . . his false-imprisonment claim is deficient." *Id.* Accordingly, summary judgment will be granted for Defendants on Hazley's false-imprisonment claim, also.

13

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**ORDERED THAT:**

1.      Defendants Becky Dooley and Kristi Cisar's Motion for Summary Judgment

[ECF No. 113] is **GRANTED;**

2.      This action is **DISMISSED WITH PREJUDICE.**

        **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  July 23, 2020                     s/ Eric C. Tostrud
                                          Eric C. Tostrud
                                          United States District Court